[No. 10,772.—In Bank.]
December 9, 1882.

## THE PEOPLE *v.* JAMES HOPE.

COMMITMENT—SETTING ASIDE INFORMATION—*People* v. *Smith*, 59 Cal. 365, affirmed on these points.

BURGLARY—MISCONDUCT OF JURY.—The bare fact of a juror having visited during the trial, the premises where it was alleged that the defendant had committed the crime of burglary, is not sufficient ground for discharging the jury.

BURGLARY—INSTRUMENTS OF CRIME—EVIDENCE.—The defendant was charged with burglary for entering the house, room, shop, warehouse, store, and building of S., with intent then and there to commit larceny, and was convicted of attempting to commit the crime. It appeared that S. owned the building, and that he occupied the first floor as a banking office and rented the second and third floors to tenants; that in consequence of the discovery of supposed indications of a design on the part of some person or persons to force an opening into the vault of the bank located in said building, certain police officers had been stationed where they could readily detect any one entering the building on the night of the arrest of the defendant, and that the defendant entered the building and was arrested on the second floor in a closet; and from an inspection of the premises, it appeared that in a closet over the bank vault a trap-door about two feet wide and two and a half feet long had been sawed out of the floor and then fastened down with screws, so that it might be opened without making much, if any, noise; and under the trap-door and on top of the vault there was found a large quantity of burglar's tools and a hole in the vault of the depth of two feet; and other tools, of a similar character, were found in the defendant's trunk in a room occupied by him in San Francisco.

*Held:* The tools found in the excavation over the vault and also those found in the appellant's trunk were admissible in evidence.

ID.—ID.—ID.—The Court, over the objection of the defendant, permitted a witness to exhibit in the presence of the jury a cylindrical steel bar about half an inch in diameter and about eight inches long, which he (the witness) said he had made for the purpose of screwing upon it the said coupling or sockets, one of which was found in the hole over the bank vault and the other in the trunk of the defendant; but the bar referred to, had not previously been offered in evidence, and the counsel for the prosecution stated that they did not intend to offer it.

*Held:* The object of screwing "said coupling or sockets" upon the bar is not stated, nor to us apparent; still, in support of the correctness of the ruling of the Court below, we are bound to presume, unless the contrary appears, that the object was a legitimate one.

ID.—EVIDENCE.—A witness was permitted to testify over the objection of the defendant, that a short time prior to the date of the alleged offense the defendant called himself by an *alias* name. *Held:* The objection to the testimony was properly overruled.

ID.—INSTRUCTIONS.—It is not error for the Court to refuse an instruction which, in effect, it has already given or afterwards gives.

ID.—ID.—ATTEMPT.—The Court instructed the jury : "If the jury find from the evidence beyond a reasonable doubt, that the defendant did at the time charged in the information intend and attempt to enter the house, room, apartment, building, etc., described in the information, of said O. S., then in his occupancy, with the intent to commit larceny therein, *and did some act to carry out said attempt,* but was anticipated in his *said attempt,* and before the alleged entry was completed or consummated, and before said larcenous attempt was carried out, and was interrupted, prevented, and anticipated in said attempt, while in or about the act of carrying it out, by outside agencies, and against his will and consent, and if you find that he had not alone made preparations *for said attempt,* but was directly, at the time of said prevention, engaged in making movements towards consummating *such an attempt,* then, and in such case only, you can find the defendant guilty of an attempt to commit burglary in the first degree, if the attempt was made between sunset and sunrise ; of burglary in the second degree if it were made between the hours of sunrise and sunset.  *  *  *  *  *   If you find that he had not alone made preparations for *said attempt,* but was directly, at the time of said prevention, engaged in making movements toward consummating such an attempt, then, and in such case *only,* you can find the defendant guilty of an attempt to commit burglary."

*Held:* It is difficult to uphold such an instruction as this, and if the evidence in regard to the acts of the defendant was of a character to render it doubtful whether he was making preparations for an attempt to commit burglary, the difficulty would be greatly enhanced, if not quite insurmountable. As it is, the jury could not have been misled by the instruction to the prejudice of the defendant.

ID.—ID.—The Court instructed the jury : "If you believe from the evidence, beyond a reasonable doubt, that the stairs, hall-way, privy-room and water-closet, and closet under the stairs, spoken of in the evidence, were at the time of the alleged entry in the occupancy of S. named in the information, and that the defendant entered in and upon such occupancy, as charged in the information, with intent to commit larceny in any part of the house or building of said S., then in his occupancy, then it is your duty to find the defendant guilty." And on appeal it was urged, that the exception to this instruction should have been sustained on the ground that there was no internal communication between the part of the building entered and that in which it was alleged that the defendant intended to commit larceny."

*Held:* In order to justify the verdict, it is not necessary that the evidence should show that the defendant effected an entrance into any part of the building ; proof of an attempt is sufficient ; but, were it otherwise, there would be no difficulty in holding that an entrance effected through a trap-door leading from the second floor of the building to the vault located in the banking-office of S. would constitute an entry into the occupation of S.

ID.—ID.—ASSUMPTION OF FACT.—The instruction does not assume that S. was in the occupancy of any part of the building.

ID.—ID.—POSSESSION OF BURGLARS' TOOLS.—There was not error in the
Court's refusing to give the instruction which it was asked to give in re-
gard to the weight which the jury might attach to the circumstance of
burglars' tools having been found in the defendant's possession at or
about the time of the alleged commission of the crime with which he
was charged. The instruction refused did not accord to the circumstance,
when considered in connection with the other circumstances of the case,
all the weight to which it was entitled.

APPEAL from a judgment of conviction and from an order
denying a new trial in the Superior Court of the City and
County of San Francisco. FREELON, J.

*Barham & Coogan,* for Appellant.

*A. L. Hart,* Attorney-General, for Respondent.

SHARPSTEIN, J.:

The question presented by the first point in appellant's
brief, as we view it, does not differ materially from that upon
which this Court passed in *People* v. *Smith,* 59 Cal. 365, and
we are satisfied with the views therein expressed.

We do not think that the bare fact of a juror having vis-
ited, during the trial, the premises where it was alleged that
the defendant had committed the crime of burglary, was a
sufficient ground for discharging the jury. From the facts
before us we are unable to see how the case of the defend-
ant could possibly have been prejudiced thereby.

For the purpose of proving that the defendant had burgla-
riously entered the building described in the information, with
the intent to commit larceny therein, witnesses were intro-
duced by the prosecution, who testified in substance, that in
consequence of the discovery of supposed indications of a
design on the part of some person or persons to force an open-
ing into the vault of the bank located in said building, certain
police officers had been stationed where they could readily
detect any one who should enter said building, on the night
of the arrest of the defendant. One of said officers testified
that about nine o'clock P. M., he saw the defendant and another
person enter said building; and another officer, who was
stationed inside of the building, testified that about the same
time he heard parties coming up the stairs in said building,

and soon afterwards he saw the defendant on the second floor of it inside a doorway leading to a closet, where he was arrested. This witness further testified that before he became aware of the entrance of any other persons than himself and two other officers, who had been stationed inside the building with him, he inspected the closets on the second floor and found that the doors of them were locked. But that after the entrance of persons other than himself and said officers, he found the door of one of the closets "sprung open, and behind the door close to the partition * * * a large sledge hammer wrapped in paper and also a handle wrapped in papers," which were not in the hall when the witness first inspected it. A further inspection of the premises revealed the following facts: In a closet over the bank vault a trap-door about two feet wide and two and a half feet long had been sawed out of the floor, and then fastened down with screws so that it might be opened without making much, if any, noise. On opening it the witnesses found beneath it and on the top of the vault a large quantity of tools, and a hole in the vault of the depth of two feet which had been made by the removal of bricks, which had been deposited between the walls of the room and the vault. The tools found on the vault were adapted to the kind of work that was evidently being prosecuted upon it, and other tools of a similar character were found in the defendant's trunk in a room occupied by him in San Francisco. To the introduction of the tools found upon the vault and to those found in the defendant's trunk objections were made by the defendant's counsel. The objections were overruled and exceptions were taken, upon which we are asked to pass.

" The implements found in the excavation over the vault," say the appellant's counsel, " were improperly admitted in evidence because there was no evidence showing or tending to show that any of them belonged to or had been in the possession of the defendant, or were in any way connected with him." If such evidence was a necessary prerequisite to the introduction of the implements to which counsel refer, their exception was doubtless well taken. But these implements were not offered in evidence until the witness, by whom they were discovered, had testified, without objection, to the fact of having found implements of a similar description, " in the

excavation over the vault," and if that testimony was admissible, of which we entertain no doubt, we are unable to conceive upon what ground the production, identification, and introduction of the implements themselves in evidence could be objectionable.

The objection to the admission in evidence of the implements found in the appellant's trunk is based on the ground that " they were not used in the perpetration of, or in the attempt to perpetrate, the offense charged." And that " if they were burglars' tools then they were evidence of another crime." There was evidence, however, which tended to prove that burglars' tools had been " used in the perpetration, or in the attempt to perpetrate, the offense charged," and that, coupled with the fact " that the defendant was in the vicinity at or about the time the burglary was committed " furnished a sufficient ground for the introduction of evidence to show " the possession by the defendant, at or about that time, of corresponding tools." (*People* v. *Winters,* 29 Cal. 658.)

Among the articles exhibited in the presence of the jury was " a cylindrical steel bar about half an inch in diameter and about eight inches long, which he (the witness exhibiting it) said he had made for the purpose of screwing upon it the said coupling or sockets "—one of which was found in the hole over the bank vault and the other in the trunk of the defendant. The Court, against the objection of the counsel of appellant, permitted the witness " to make experiments in the presence of the jury with the couplings or sockets attached to said cylindrical bar." The ground of the objection was that the cylindrical bar was not in evidence. It had not been formally offered in evidence, and the counsel for the prosecution stated that they did not intend to offer it in evidence. But the witness had exhibited it on the witness stand, and had stated that he had it made for the purpose of screwing " said coupling or sockets " upon it. The object of screwing " said coupling or sockets " upon it is not stated, nor to us apparent. Still, in support of the correctness of the ruling of the Court below we are bound to presume, unless the contrary appears, that the object was a legitimate one. Perhaps the use to which the coupling or sockets might be put, could be made more clear by screwing them upon said cylindrical bar.

It was not objected that the witness was not an expert, and we are unable to determine from anything before us that it was not necessary for him to use said cylindrical bar in order to elucidate and illustrate clearly the character of the " coupling or sockets " which had been admitted in evidence. It was not only proper, but of the first importance, that the prosecution should show that the implements found on the vault, and in the appellant's trunk, were " burglars' tools." And we must presume that it was for that or some other legitimate object that the witness was permitted to experiment with some of them in the presence of the jury, and that he was allowed to use an instrument of his own for the purpose of making the experiment better understood than it otherwise would be. The objection to the question put to the witness Aiken was properly overruled.

The Court refused to give the following instruction, which the defendant requested to have given to the jury : " Before you can find the defendant guilty of the charge in the information you must be entirely satisfied from the evidence that the defendant entered the house, room, shop, warehouse, store, or building of Peder Sather, in the City and County cf San Francisco, with the intent then and there to commit larceny ;" but gave the following : " I instruct you that it is not sufficient for you to find that the defendant entered the house, room, shop, warehouse, store, or building of Peder Sather ; but in addition to such entry you must find that he entered with the intent to commit larceny therein, and if you do not so find you should acquit the defendant."

We are unable to discover any satisfactory reason for the Court's refusal to give the instruction which it was requested to give. But since there is no substantial difference between that and the one which it gave, it is not a sufficient ground for reversing the judgment. And this applies as well to the refusal to give the instructions numbered 21 and 23, which the defendant also asked to have given.

But the jury did not find the defendant guilty of buglary, and did find him guilty of an attempt to commit burglary only, so that he could not have been prejudiced by the refusal to give an instruction which contained a correct definition, not of the crime of which he was found guilty, but of a higher

one.  Therefore, the material question is, whether the jury was correctly instructed as to what facts it was necessary to prove before the defendant could be found guilty of an attempt to commit burglary.  And the instructions given upon that point is attacked by appellant's counsel, who insists that "it is clearly erroneous and was fatally prejudicial."  It reads as follows:

"If the jury find from the evidence, beyond a reasonable doubt, that the defendant did, at the time charged in the information, intend and attempt to enter the house, room, apartment, building, etc., described in the information of said Sather, then in his occupancy, with the intent to commit larceny therein, *and did some act to carry out said attempt,* but was anticipated in his *said attempt,* and before the alleged entry was completed or consummated, and before said larcenous attempt was carried out, and was interrupted, prevented, and anticipated *in said attempt* while in or about the act of carrying it out by outside agencies, and against his will and consent; and if you find that he had not alone made preparations *for said attempt,* but was directly at the time of said prevention engaged in making movements towards consummating *such an attempt,* then, and in such case only, you can find the defendant guilty of an attempt to commit burglary in the first degree if the attempt was made between sunset and sunrise; of burglary in the second degree if it were made between the hours of sunrise and sunset."

Of course the attempt, if any was made to commit burglary, consisted in doing some act or acts towards the commission of that crime, and if the defendant was "prevented and anticipated in said attempt," it would logically follow that he never made it.  He might have made preparations for the commission of the crime without being guilty of an attempt to commit it.  And if this instruction would be liable to lead the jury to confound a preparation to commit the crime with an attempt to commit it, it would be clearly erroneous.  But the Court, in the following extract, attempted to point out the distinction between a preparation and an attempt: "And if you find that he had not alone made preparations for said attempt, but was directly, at the time of said prevention, engaged in making movements towards consum-

mating such an attempt, then, and in such case *only*, you can find the defendant guilty of an attempt to commit burglary." It is difficult to uphold such an instruction as this, and if the evidence in regard to the acts of the defendant was of a character to render it doubtful whether he was making preparations or an attempt to commit burglary, the difficulty would be greatly enhanced, if not quite insurmountable. As it is, we do not think that the jury could have been misled by that instruction to the prejudice of the appellant, although we would be much better satisfied, if the Court had given the instruction which the defendant's counsel asked to have given upon this point.

It was charged in the information that the defendant feloniously and burglariously entered "the house, room, shop, warehouse, store, and building of Peder Sather, then and there doing business under the firm name and style of Sather & Co., situated on the north-east corner of Montgomery and Commercial streets, in said city and county of San Francisco, and known as No. 526 Montgomery street."

The evidence tended to show that Sather owned that building, and that he occupied the first floor as a banking office, and rented the second and third floors to tenants. We are unable to discover any conflict in the testimony of the witnesses upon the questions of ownership and occupancy.

. One of the instructions excepted to by the defendant reads as follows: "If you believe from the evidence, beyond a reasonable doubt, that the stairs, hallway, privy-room, and water-closet, and closet under the stairs, spoken of in the evidence, were at the time of the alleged entry in the occupancy of Peder Sather, doing business as Sather & Co., named in the information, and that the defendant entered in and upon such occupancy, as charged in the information, with intent to commit larceny in any part of the house or building of said Sather, then in his occupancy, then it is your duty to find the defendant guilty."

We are urged to sustain the exception to this instruction on the ground that there was no internal communication between the part of the building entered and that in which it was alleged that the defendant intended to commit larceny. But in order to justify the verdict rendered in this case it is not necessary that the evidence should show that the defend-

ant effected an entrance into any part of the building. Proof of an attempt to enter with the intent to commit larceny is sufficient. But were it otherwise, we should find no difficulty in holding that an entrance effected through a trap-door leading from the second floor of the building, to the vault located in that part of the building occupied by Peder Sather as a banking office, would constitute "an entry in the occupancy of Peder Sather." The trap-door would constitute "some internal communication" between the closet on the second floor and the banking office on the first. We do not think that this instruction assumes that Sather was in the occupancy of any part of the building. Nor do we think that is assumed in another instruction which is excepted to on that ground alone.

Upon the question of what was or was not sufficient evidence to sustain the allegation in the information as to the occupancy of Peder Sather, we think that the instructions are as full, explicit, and accurate as the case required that they should be, and we think that there was no error in the Court's refusing to give the instructions which it was asked to give in regard to the weight which the jury might attach to the circumstance of burglars' tools having been found in the defendant's possession at or about the time of the alleged commission of the crime with which he was charged. The instructions asked and refused on that point did not accord to that circumstance, when considered in connection with other circumstances in the case, all the weight to which it was entitled.

Judgment and order affirmed.

ROSS, McKINSTRY, MYRICK, and McKEE, JJ., and MORRISON, C. J., concurred.