## STATE v. HATTON PERRY.

*Trial—Jury, Misconduct of—Unauthorized Hearing of Testimony—Visit of Jury to View Premises—Discretion of Trial Judge—New Trial.*

1. In the absence of constitutional or statutory prohibition, it is in the discretion of a trial Judge to permit the jury to visit the scene of the *res gestae*, in criminal and civil cases, whenever such visit appears important for the elucidation of the evidence but such visit must be carefully guarded to prevent conversation with third parties and no evidence must be taken.

2. The granting or refusing a new trial rests in the discretion of the trial Judge when the circumstances are such as merely to put suspicion on a verdict by showing not that there was, but that there might have been undue influence brought to bear on the jury because there was opportunity; but, where the fact appears that undue influence was brought to bear on the jury or that they heard other evidence than that offered on the trial, this Court on appeal will, as a matter of law, grant a new trial whether the prisoner be convicted or acquitted, since there has been no trial in contemplation of law.

3. Where a jury, after the close of the evidence, visited the scene of the alleged crime and made enquiry of a passer by as to the identity of a certain house whose distance from the alleged *locus* was material, their conduct in thus "eliciting other evidence than that offered on the trial" is ground for a new trial whether their visit to the spot was by or without leave of the Court.

INDICTMENT for rape, tried at February Term, 1897, of BEAUFORT Superior Court, before *Bryan, J.*, and a jury. There was a verdict of guilty and after sentence of death was pronounced it came to the knowledge of the prisoner's counsel that the jury had visited the scene of the alleged rape while they were considering the case, without the knowledge or consent of the defendant, his counsel or the Court. An affidavit was filed by the prisoner to that effect and as a basis for a motion to set aside the verdict and for a new trial. His Honor found the following facts:

"The evidence in this case was closed on Saturday even-

ing, the 20th of February. The jury was put in charge of
a sworn officer. It was agreed by counsel on both sides
that the jury might attend church on Sunday in a body
and with the officer and also take walks for purpose of recre-
ation. On Sunday afternoon the jury started out for a walk
and, upon the suggestion of a juror, they walked down the
railroad track to the red hill. After being there they went
to view the surroundings and endeavor to locate the place
where the rape was committed. There was some discussion
as to the location of the place. They discussed the distance
of Julia Williams' house and also that of Arthur Williams
from the supposed scene of the rape with reference to the
testimony at the trial. The officer in charge asked of a
negro boy, at the suggestion of a juror, which was Anthony
Perry's house and then pointed it out to the juror. One of
the jurors put his foot on the stubble near the track and
said "See! it makes no impression." A button was found
and a juror jestingly said it might be one of Annie Smith's
drawer buttons and it was discussed. At one time the jury
were divided into groups. Three or four went off seventy-
five or a hundred yards into the bushes temporarily. At no
time were any of the jurors out of the view of the officer. A
juror remarked that the house on top of the red hill was
further than they thought it was. The jurors discussed the
case while out there. The cedar spoken of in the testimony
was seen. The railroad walked on is a thoroughfare. The
place was not located, no one being present to identify it.
The jury went to the scene of the rape without knowledge
or consent of the Court or of the counsel engaged in the
cause."

The evidence in the case was closed on Saturday evening,
the visit of the jury to the locality was on Sunday and the
argument of counsel and charge of the Court were on
Monday.

His Honor refused to set aside the verdict and the defendant appealed.

*Mr. Zeb V. Walser, Attorney General,* and *Mr. J. H. Small,* for the State.

*Mr. Chas. F. Warren,* for the defendant (appellant).

CLARK, J.: In *Jenkins* v. *Railroad,* 110 N. C., 438, it is said: "The granting or refusal of the application for the jury to view the premises is a matter which rested in the sound discretion of the trial Judge. On some occasions it may be very useful and indeed almost necessary.       .       . The matter is one which must be left to the sound discretion of the trial Judge by whom such motion should only be granted when it shall seem clear to him that it is required in the interest of justice. But this practice is not to be encouraged." There are some States in which express statutes have been passed recognizing the right to grant a jury of view, but the authority inheres in the Courts in the investigation of truth to call in this and other aids, and rests in the discretion of the presiding Judge in the absence of constitutional or statutory prohibition. It is upon this principle that maps, photograph, expert evidence and the like have been admitted without express statutes authorizing it. In the celebrated trial of Professor Webster for the murder of Dr. Parkman, the jury was permitted to see the place where the crime was committed. *Com.* v. *Webster,* 5 Cush. (Mass.), 295; and this was also done on the trial of *Cluverius,* 81 Va., 787, in both instances there being no statute to authorize it. In *State* v. *Gooch,* 94 N. C., 987, and other cases it has been the recognized practice in this State. That excellent authority Wharton's Cr. Pl. and Practice (Section 707) says that the jury is permitted to visit the scene of the *res gestae* in criminal as well as civil cases, whenever such visit appears to the Court important for the elucidation of

the evidence, but the visit must be jealously guarded to prevent conversation with third parties." This is the accepted modern doctrine and is founded on reason, as the object of a trial is to avail of every means to ascertain the truth of the issue, guarding against any thing that may muddy its source.

Considered as an authorized inspection of the *locus* in *quo*, and as such counsel argued it, there was error; for it appears that the jury interrogated a passer by as to the identity of a certain house whose distance from the scene of the alleged crime was material. The answer may or may not have been correct, and the query was based upon the assumption of a given spot as the immediate locality of the crime which may have been erroneous. While there is a difference between the authorities as to whether or not the prisoner must accompany the jury on their inspection of the premises, (Thompson on Trials, Sections 886, 887), all concur that evidence cannot be taken on such occasions, the object being merely to present to the jury the scene more vividly than is possible by the description of witnesses, so that the jury may with a better comprehension apply the evidence of the witnesses, which must be taken only in open Court and in the presence of the prisoner. Under the settled practice, showers are appointed by the Court to point out the localities merely, and no more, so the jury may apply the evidence received on the trial. Thompson, *supra*, Section 914; Bailey's Practice, 228; Archbold Practice, 407, (6th Eng. Ed.); *State* v. *Lopez*, 15 Nev., 407.

For a still stronger reason it was error for the jury to receive evidence on this occasion since in fact it was a view by the jury of the premises not under authority of the Court. It ought rather, therefore, to be considered as a charge of misconduct by the jury. There are decisions that the bare fact of the jury having visited the scene of a capital offence

with whose trial they are charged, though made without leave of the Court, is not, *per se*, ground for a new trial but that some prejudice must appear. *People* v. *Hope*, 62 Cal., 291. But we are not called upon to pass on that point, as to which authorities conflict, for the interrogation of the passer by was misconduct calculated to prejudice the prisoner. *Hayward* v. *Knapp*, 22 Maine, 5; *State* v. *Lopez*, 15 Nev., 407, in the leading case of *State* v. *Tilghman*, 33 N. C., 513, it is held that where "on a trial, the circumstances are such, as merely to put suspicion on the verdict by showing not that there was, but that there might have been undue influence brought to bear on the jury, because there was opportunity, the granting or refusing a new trial rests in the discretion of the presiding Judge; but, if the fact be that undue influence was brought to bear on the Jury, as if they were fed at the charge of the prosecutor or the prisoner, or if they be solicited and advised how their verdict should be, or if they hear other evidence than that which was offered on the trial; in all such cases there has been no trial in contemplation of law, and the court on appeal will as a matter of law direct a new trial, whether the prisoner was acquitted or convicted." This has ever since been recognized as law and has been repeatedly cited and approved. The jury having, by their questions to the passer by, "elicited other evidence than that offered on the trial", it is ground for a new trial equally whether the visit of the jury to the spot was by leave of the Court or without such leave.

New trial.