[Crim. No. 1627. Second Appellate District, Division Two.—June 20, 1928.]

THE PEOPLE, Respondent, v. J. D. STAIGERS, Appellant.

Geo. B. Ross for Appellant.

U. S. Webb, Attorney-General and James S. Howie, Deputy Attorney-General for Respondent.

CRAIG, J.—The appellant was charged and convicted of the crime of forgery, thereafter moved for a new trial, which was denied, and appeals from the judgment and from the order denying such motion. The specific acts upon which appellant was charged with having committed the offense mentioned, consisted of the alleged preparation in pencil of a letter, to which he obtained the signatures of his employers on April 23, 1927, which writing he later erased, writing in lieu thereof with typewriter, upon the same paper and over said signatures, a contract of employment at a stated salary and commission, and which such contract Staigers subsequently attempted to enforce by an action in the superior court.

It is first contended upon this appeal, and was urged as a ground of motion for arrest of judgment, that appellant was erroneously prosecuted for forgery under the provisions of section 470 of the Penal Code, and that the offense, if any, should have been charged under section 134 thereof. It is provided by section 470 that:

"Every person who, with intent to defraud, signs the name of another person, . . . or falsely makes, alters, forges, or counterfeits, any . . . writing obligatory, . . . contract, . . . ; or counterfeits, or forges the seal or handwriting of another; or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged,

or counterfeited, with intent to prejudice, damage, or defraud any person; . . . is guilty of forgery."

Section 134 of the Penal Code reads as follows:

"Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

It is to be observed at a glance that appellant was not charged with having prepared a false paper or instrument in writing with intent to produce it as genuine or true, upon any trial, proceeding, or inquiry authorized by law. The information alleged that J. D. Staigers did "make, forge and counterfeit a certain instrument in writing (setting forth the contract in full) . . . well knowing that the said instrument in writing was false, *altered, forged and counterfeited*, as aforesaid, and *with intent* then and there *to defraud* . . . wilfully, unlawfully, falsely, fraudulently and feloniously utter, publish and pass as true and genuine the instrument aforesaid, *by filing an action* in the superior court . . . to enforce the said false and forged instrument in writing." It was not the theory or contention of the prosecution that appellant at any time intended to produce upon a trial, proceeding, or inquiry the original letter which he prepared and caused to be signed, or to make any use of it whatever. If he erased the writing to which his employers appended their signatures and in its place and stead wrote something different, or so altered the existing instrument as to give it a different effect, such act constituted forgery under section 470 of the Penal Code. (*People* v. *Brotherton,* 47 Cal. 388, 401.) The instrument which appellant did in fact produce and seek to enforce was therefore a counterfeit in its entirety, and fell within all three of the definitions embraced in the information; and being "altered, forged and counterfeited," with intent to defraud, such offense, if committed, was within neither the terms nor the spirit of section 134 of the Penal Code, but it embodied all the elements of forgery as defined both by the common law and by the statutes of this state, and was properly so designated by the information. (*People* v. *Bendit,* 111 Cal. 274 [52 Am. St. Rep. 186, 31 L. R. A.

831, 43 Pac. 901]; *People* v. *McPherson*, 6 Cal. App. 266 [91 Pac. 1098].)

■ The defendant swore, and insisted throughout the trial, that he did not write said letter, in lead pencil or otherwise, but that the contract of employment upon which he based his civil action, and which was introduced in evidence in this case, was made and executed by all parties long prior to April 23, 1927. There is a direct conflict of evidence upon this issue, and so this court will not pass upon it. ■ The principal ground upon which appellant seeks a reversal of the judgment consists of asserted errors of the trial court in denying his motion in arrest of judgment and for a new trial, which were founded upon certain affidavits setting forth alleged newly discovered evidence. It is strongly urged that if said contract was in fact executed as asserted by appellant and was in existence for some months prior to the date of the alleged forgery thereof, he was not guilty of the offense charged in the information. It is claimed that after his conviction and while confined in the county jail awaiting sentence, appellant's counsel interviewed J. A. Marshall, a deputy labor commissioner, and then for the first time was informed by the latter that Staigers had exhibited to him the contract in question early in March, 1927; that Marshall positively identified the contract marked People's Exhibit No. 1 in this case as the document which he had seen on the date last mentioned. The deputy commissioner's affidavit to the foregoing facts, and, further, that he was not acquainted with nor interested in the defendant, was presented to the trial court upon said motions, and is a part of the record herein. L. S. Driggs also made an affidavit that he had known the defendant about three years, but had not known of the criminal action until January, 1928; that upon inspection of People's Exhibit No. 1 he identified the same, and distinctly remembered having seen it prior to April 23, 1927, and "perhaps as early as 1926"; that he "distinctly recalled that the contract was peculiar in form in that certain of the signatures subscribed thereto overlapped the typewritten portion of the contract." Affidavits of the defendant and his counsel averred that during the preparation for trial of this case one of his attorneys persistently urged him to try and remember as to whether or not some one or more persons

had been shown the contract before April, 1927, but that he had entirely forgotten these incidents and did not in fact know at the time of trial that such evidence could be obtained or that it existed. While, as we have observed, the defendant positively testified that said contract was genuine, that he did not write any letter and cause it to be signed, nor erase or alter any such document, the People's witnesses Palmer, Colmeraues, and Grau just as positively testified upon the trial that appellant did write said letter with a "soft lead pencil," and that when questioned he gave various reasons for so doing. A statement in writing, signed by Staigers and the three persons last mentioned, dated April 25, 1927, also appears in the record as People's Exhibit No. 2, wherein the defendant admitted having so written said letter, and that: "The entire letter was written in soft lead pencil except the signature of Grau, Colmeraues and Palmer which were in ink and on the lower left hand corner of the sheet. Their signatures appeared as below. This statement is made and notorized as a guarantee against the above mentioned sheet again turning up with any written matter other than the above appearing over said signatures." A handwriting expert testified that a minute examination of the contract before the jury disclosed beyond question that certain typewritten words had been written on top of portions of the signatures; that he found parts of small pencil markings, and evidences of erasures in various places on the exhibit. Another expert testifying for the defendant admitted that he discovered marks or specks which might have been pigments of a pencil. All that either affidavit presented on behalf of the defendant in support of his motion for a new trial tended to show was that the contract in controversy existed previously to the date of the alleged forgery by alteration. To this fact the defendant himself had testified, and hence the offered new testimony was but cumulative in this respect, and tended to contradict four witnesses produced by the prosecution. Appellant's memory and some of his testimony from the witness-stand were not entirely consistent nor at all in accord with that of other witnesses which the jury apparently accepted as true, which may properly have been considered by the trial court in passing upon the motion for new trial. Among other inconsistencies, he could not remember when he wrote

People's Exhibit No. 1, and although he testified as to where it was written, he admitted that in giving a deposition some time previously in the civil action he then claimed that he did not know where it was written. He swore that no one was present when he wrote it, but almost in the same breath he accounts for the discovery of the place by saying that shortly after being called to the district attorney's office in June or July, 1927, he "began to dig out all the facts"; that he visited various offices where he had called when he prepared the contract, and "by having the weight of a forgery charge hanging over my head, I went to all of my friends," and finally says he found he had written it in the offices of the California Petroleum Company, that he then took the document to a bank some three miles distant, and signed it there, when no one was present. A trial judge is not compelled to accept as true every assertion of a witness or of an affiant merely because it is not directly contradicted. It may well have been the conclusion of the trial court that appellant's asserted loss of memory as to the witnesses Marshall and Driggs until after the trial, weighed in the light of his other testimony during the trial, did not indicate the exercise of .that degree of good faith or diligence which the statute requires, and also that in any event the new evidence was not such as would, when traversed by strong contradictory testimony, render a different result probable in the minds of another jury.

The claim of newly discovered evidence is viewed with distrust and disfavor, and in the absence of the strictest showing of diligence, or upon the tender of merely cumulative evidence, or evidence which would not strongly tend to produce a different result, a new trial will be denied. (*People* v. *Freeman,* 92 Cal. 359 [28 Pac. 261]; *People* v. *Gonzales,* 143 Cal. 605 [77 Pac. 448; *People* v. *Lapique,* 136 Cal. 503 [69 Pac. 226].) These questions are addressed to the sound legal discretion of the trial court, and except upon a showing of manifest abuse of such discretion, its action will not be disturbed on appeal. (*People* v. *Weber,* 149 Cal. 325 [86 Pac. 671]; *People* v. *Byrne,* 160 Cal. 217 [116 Pac. 521]; *People* v. *Canfield,* 173 Cal. 309 [159 Pac. 1046]; *People* v. *Kilfoil,* 27 Cal. App. 29 [148 Pac. 812].) We cannot say that such an abuse of discretion is shown here.

■ Finally, it is argued that while the purported contract was apparently an agreement in writing between the Watson Perforating Company, Inc., a corporation, and J. D. Staigers, it was not signed by the corporation, but was in fact signed by Grau, Colmeraues, and Palmer, who were not mentioned in the body of the instrument; and, further, that the contract provided for cancellation by Staigers at any time upon a forfeiture of any commissions which might be due him, and that since he was at liberty to repudiate it, it had no legal binding force upon the parties. Hence, it is urged that the instrument was a mere *nudum pactum*, and that since such documents are not subjects of forgery, no offense could be or was committed. The contract is set forth in full in the information, and by its provisions the corporation agrees to pay Staigers $150 per month to start said salary to be increased to $175 per month "when both parties concerned have agreed"; and it further provides for a commission of fifteen per cent upon all business done by the corporation. True, the corporate name is not signed thereto, but the three signers appear from the record before us to have been the president, secretary, and treasurer, respectively, of said institution. It is dated January 20, 1926, at Torrence, California, and recites, in part, "This contract entered into . . . between the Watson Perforating Company, Inc., . . . and J. D. Staigers. . . . J. D. Staigers shall receive the following named salary and commission," and is signed, as we have seen, by the officers of the contracting corporation. It has been held that a letter signed by the president of a corporation, individually, without adding his title of office, will bind the corporation if the other party understood that he was dealing with the corporation. (*Richardson Press* v. *Vandergrift*, 165 App. Div. 180 [150 N. Y. Supp. 238].) Other cases to the same effect are *St. Clair* v. *Rutledge*, 115 Wis. 583, 594 [95 Am. St. Rep. 964, 92 N. W. 234], *Lewis* v. *Pulitzer Pub. Co.*, 77 Mo. App. 434, and Fletcher, Ency. Corp., vol. 3, p. 2460, sec. 1470. It is conceded that appellant instituted suit upon this identical paper for the collection of moneys which he claimed to have earned thereunder. It was an agreement signed by the three principal officers of the corporation that the latter would compensate appellant for services rendered, and had it been intentionally so executed by the corporate

officials and relied upon by all parties, little could have been added to its legal import by the signing of the name under which they were doing business as a corporation. The contract was therefore not a *nudum pactum* and the evidence strongly tends to show that by the alterations heretofore mentioned appellant intended to forge an enforceable contract.

The judgment and orders appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.