[Crim. No. 442. Fourth Appellate District.—May 25, 1939.]

THE PEOPLE, Respondent, v. Mrs. ORPHA B. GOODALE, Appellant.

Thomas Whelan and Richard L. Vaughn for Appellant.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney-General, for Respondent.

MARKS, J.—Defendant was convicted of the crime of negligent homicide. She has appealed from the judgment and from the order denying her motion for new trial.

The record presents a somewhat unusual situation. Defendant applied for probation. At the conclusion of the hearing of her petition the trial judge, in a formal written order, first definitely suspended the imposition of sentence on defendant for two years during which time he placed her on probation. Immediately following the terms of probation the court sentenced defendant to confinement in the California Institution for Women at Tehachapi for the term prescribed by law, commitment to be withheld for two years, during which time defendant was required to conform to additional conditions of probation. As no question is raised on the seemingly contradictory terms of the orders we will not inquire into their regularity. All questions argued may be considered on the appeal from the order denying the motion for new trial.

Defendant presents the following grounds for reversal of the judgment and order denying her motion for new trial: Insufficiency of the evidence to support the verdict; misconduct of a juror; misconduct of the district attorney; newly discovered evidence; error in instructions given and in refusing to give instructions requested by defendant.

The evidence shows that on November 27, 1938, defendant, in company with Thomas Jordan, a friend of defendant's family, drove his automobile for him from Escondido to San Diego. They transacted some business, had lunch, consumed about three or four drinks each of intoxicating liquor and commenced the return trip to Escondido shortly after 3 o'clock in the afternoon, with defendant driving the car. They were leaving San Diego over Sixth Avenue which runs north and south. Two boys, Richard Parker and Dick Noel, were riding their bicycles north on Sixth Avenue at the same time. Richard was riding directly ahead of Noel and about six feet

west of the east curb of Sixth Avenue. Defendant, driving north at a lawful speed, overtook the two boys at the junction of Sixth and Hawthorne Avenues. In an attempt to pass the boys on the bicycles, the right front of the automobile defendant was driving came into contact with Richard's bicycle. He was thrown to the pavement and his neck was broken. He died shortly afterwards.

Defendant first argues that there is no sufficient evidence of her intoxication. While the evidence on this question is sharply conflicting there is ample evidence in the record supporting the implied finding of the jury that she was under the influence of intoxicating liquor at the time and place of the accident. The question of the weight and sufficiency of the evidence and the credibility of the witnesses is first addressed to the jury. Where, as here, there is abundant evidence supporting the implied finding of the jury on that question the decision of that body is final and cannot be disturbed here because of conflicts in the evidence.

Defendant next urges that, assuming her intoxication for the purpose of argument only, there is insufficient evidence to support the verdict of negligence on her part or that such negligence or intoxication was a proximate cause of the collision.

It is defendant's contention that the two boys were riding their bicycles north near the east curb line of Sixth Avenue; that she was driving the automobile in the same direction in a lawful manner; that there was ample space between the automobile and Richard's bicycle to permit her to pass it safely had it continued on its course; that suddenly and without any warning Richard swerved his bicycle to the left and into the front of the automobile; that upon seeing this maneuver she turned the automobile sharply to her left but could not avoid the collision.

Had the jury accepted this evidence as true its verdict would have been in favor of defendant for there must be a causal connection between defendant's intoxication or negligence and the accident in order to support a verdict finding her guilty of negligent homicide. (See *People* v. *Hurley,* 13 Cal. App. (2d) 208 [56 Pac. (2d) 978].)

Howard C. Gearnflow, a disinterested witness, testified that when defendant was passing the bicycles she swerved the automobile to her right and onto Richard and his bicycle. Long

scratches on the pavement, probably made by a pedal of the bicycle while it was being carried by the automobile, support the testimony of this witness. The jury accepted this evidence as true. It is sufficient to support the verdict.

Defendant bitterly attacks the testimony of Gearnflow and points to inconsistencies in it. She also attacks the evidence concerning the scratches on the pavement. These arguments should have been, and probably were, addressed to the jury. In one particular this witness was undoubtedly mistaken in the position in which he placed the bicycles on the street at the time of the accident. The balance of his evidence is not inherently improbable and as the jury accepted it as true the conclusion of that body cannot be disturbed here. Because a witness is mistaken in one particular in his description of an accident does not prevent a jury from accepting his other evidence as true where it is not inherently improbable.

The charge of misconduct on the part of the jury is based on an affidavit of John Morris, in which the following appears:

"That on Tuesday, January 24, 1939, he was present during a portion of the trial of the case of *The People of the State of California* v. *Orpha B. Goodale;* that during a recess of the court and before testimony being introduced on behalf of the defendant had been completed he heard a statement made by one of the jurors sitting in the trial of said case to a woman in the hall of the court house; that said juror made a statement substantially as follows: 'The attorney for the defendant is groping in the dark and trying to manufacture evidence and doesn't have a leg to stand on as far as the evidence is concerned.' "

The affidavit proceeds to identify this juror on information and belief as one Hildreth Peckham, and states that counsel for defendant were informed of the statement so made after the conclusion of the trial.

Two other affidavits were filed at the same time by permission of the trial judge, who at that time said: "On the understanding— . . . they may be deemed denied, they may be filed."

If the statements in the Morris affidavits be deemed denied, there is presented the familiar situation of a conflict in the

evidence that was resolved against defendant by the trial judge.

That the remarks of the juror were highly improper cannot be denied. In commenting on misconduct of jurors in *People* v. *Yee King,* 24 Cal. App. 509 [141 Pac. 1047], the court said:

"This being so, it cannot be fairly said that the showing made in support of the motion for a new trial would have warranted the court below in finding that the visit of the two jurors to the scene of the homicide resulted in substantial injury to the defendant. That such visit was an irregularity amounting to serious misconduct must be conceded; but such misconduct is not *per se* sufficient to warrant the granting of a new trial. Prejudice must be shown to have followed; and in the absence of an affirmative showing of resultant injury to the defendant in the present case the verdict must stand. (*People* v. *Hope,* 62 Cal. 291; *People* v. *White,* 20 Cal. App. 156 [128 Pac. 417]; *People* v. *Kramer,* 117 Cal. 647 [49 Pac. 842]; *State* v. *Perry,* 121 N. C. 533 [61 Am. St. Rep. 683, 27 S. E. 997]; *State* v. *Tilghman,* 33 N. C. 513.)"

In the instant case there is no showing of sufficient injury to defendant from the remarks of the juror to justify us in ordering a new trial. (See *People* v. *Tugwell,* 32 Cal. App. 520 [163 Pac. 508]; *People* v. *Staigers,* 92 Cal. App. 628 [268 Pac. 923].) By this conclusion we do not want to be understood as condoning the action of the juror. If he made the statement credited to him he violated the admonition frequently given to the jury by the trial judge and was subject to punishment therefor. What action was taken against him is not a part of this record and cannot directly affect the results of this appeal.

Defendant complains of misconduct of the district attorney. This misconduct is set forth in an affidavit of one of her counsel which was presented at the hearing of the motion for new trial. These charges were of such a serious nature that the trial judge should not have contented himself with the statement that the affidavit "may be deemed denied". A prompt investigation into the truth of the charges should have been made.

After summarizing the evidence of Mrs. Goodale as to the circumstances of the collision, the affidavit averred on information and belief that Thomas Jordan, who was in the

automobile with Mrs. Goodale at the time of the accident, would corroborate defendant's testimony; that she was operating the automobile in a careful, prudent and lawful manner and that Richard Parker swerved his bicycle into the automobile so that defendant could not avoid the collision; that defendant was not under the influence of intoxicating liquor to an appreciable degree at the time of the accident; that defendant was prevented from securing the testimony of Jordan at the trial by the district attorney of San Diego County who, on or about October 29, 1938, caused to be filed against Thomas Jordan a criminal complaint charging him with the crime of manslaughter in connection with the death of Richard Parker; that no preliminary hearing was ever had on the charge; that this charge against Jordan was dismissed on December 19, 1938; "that affiant is informed and believes because of conversations with Claude L. Chambers, attorney for ThomasJordan, and with various members of the district attorney's staff, that it was the purpose of the office of the district attorney of San Diego to hold said charge of manslaughter over Thomas Jordan so that he would not testify for Orpha B. Goodale; that after affiant had had such conversations with said persons, the said cause against Thomas Jordan was, without any notice to affiant, dismissed on December 19, 1938; that when affiant first learned that the cause against Thomas Jordan had been dismissed, which was on the day the trial of the above-entitled action was commenced, he caused a subpoena to be issued for said Thomas Jordan, but that the said Thomas Jordan concealed himself, and the deputy sheriff charged with the duty of serving said subpoena was unable to locate said Thomas Jordan during the trial of this action, although the same continued for three days; that affiant is informed and believes that said Thomas Jordan concealed himself because of the fact that he feared prosecution on the part of the office of the district attorney of San Diego County"; that the reason affiant had not caused a subpoena to be issued for Thomas Jordan before January 16, 1939, was that the attorney for Jordan informed affiant that as long as the manslaughter charge was pending against him he would not be permitted to testify at the trial of defendant for the reason "that anything he might say might tend to incriminate him".

The gravamen of the foregoing charge, though somewhat vaguely stated, is that the district attorney used the power

of his office through a criminal complaint to obstruct justice by depriving defendant of the testimony of a witness in her behalf. This charge is so grave that an investigation in the trial court of its factual foundation would have been highly proper. There was no such investigation and the affidavit was met with the wholly inadequate statement that its averments "may be deemed denied". Under these circumstances we are forced to the unsatisfactory position of a consideration of the technical sufficiency of the affidavit as a ground for granting the motion for new trial. From the record there would seem to be no probable cause for believing Jordan guilty of manslaughter in connection with the death of Richard Parker. He was neither driving nor controlling the automobile. The examining physician reported him only "slightly intoxicated."

It is clear from the record that the evidence of the prospective witness Jordan was not newly discovered after the trial. Mrs. Goodale knew he was riding with her and knew what he saw at that time. She therefore knew at all times to just what facts he could truthfully testify. All that can be claimed is that the availability of this evidence was first discovered by defendant on the first day of the trial.

It is elementary that a defendant must use due diligence in an endeavor to produce her evidence at her trial. Is sufficient excuse offered by defendant for her failure to have a subpoena issued for Jordan prior to the first day of the trial? This excuse is that the attorney for Jordan informed an attorney for defendant that Jordan would not testify as long as the manslaughter charge was pending against him. This would hardly excuse the service of a subpoena on Jordan before the trial date. If he had been subpoenaed he would have been present in court at the trial, or his absence could have been made a ground for an application for a continuance had his testimony been considered necessary to defendant. The reason given by his counsel for his refusal to testify had been removed twenty-seven full days before the commencement of the trial. The inference to be drawn from the affidavit is that had he been in court during the trial his testimony would have been available to either party as the criminal charge against him had been dismissed. Assuming that the discovery of his availability as a witness on the first day of the trial would enable us to regard his evidence as

newly discovered, there is no showing of due diligence on the part of defendant to obtain the presence of this witness.

As defendant discovered on the first day of the trial that Jordan might be available as a witness in her behalf, she should have called the attention of the trial judge to that fact, together with the fact of his absence, and should then have taken whatever steps she could to protect herself from any injury resulting from his absence. This she did not do. She announced that she was ready for trial and proceeded throughout the trial without making any request for a continuance to enable her to search for this witness. It was not until the hearing of the motion for new trial that the facts contained in the affidavit were laid before the trial judge. It appears that defendant was willing to proceed with the trial without the presence of Jordan and to gamble on its results without the benefit of the testimony of that witness. She did not even ask the indulgence of the trial court to assist her in securing this evidence. All of the facts set forth in the affidavit were known to her before the jury found her guilty. It was not until her gamble had gone against her that she sought relief, too late to do her any good.

On the motion for new trial defendant presented the affidavit of Dr. E. Hodge Crabtree as disclosing newly discovered evidence. This affidavit discloses that Dr. Crabtree was called to treat defendant immediately after the verdict finding her guilty had been returned; that he found her in a condition of collapse from what is commonly (not medically) known as mental shock produced by the verdict; that, excepting an alcoholic breath, she exhibited all of the symptoms of intoxication; that in his opinion defendant was of such a temperament that the shock of the verdict did produce, and the similar shock of finding Richard Parker unconscious in the street after the automobile she had been driving had struck him, would have produced all of the symptoms of intoxication except an alcoholic breath.

Dr. Crabtree had been a witness for defendant at the trial. He testified that after an examination of defendant he was of the opinion that the shock of finding Richard Parker unconscious in the street might have produced and probably did produce in her all of the symptoms of intoxication testified to by witnesses for the People except the alcoholic breath. To that extent the facts set forth in his affidavit were cumulative. An appellate court is not permitted to grant a new

trial to allow a defendant to introduce evidence that is cumulative. (*People* v. *Hill*, 2 Cal. App. (2d) 141 [37 Pac. (2d) 849].)

 Defendant complains of the refusal to give instructions requested by her. The subject-matter of those instructions was covered generally in other instructions given to the jury. She also complains of instructions given by the trial court which permitted her conviction on proof beyond a reasonable doubt of her having committed any of the several acts made punishable by section 500 of the Vehicle Code. As the information charged the commission of such acts the instruction was proper. (*People* v. *Leyshon*, 108 Cal. 440 [41 Pac. 480] ; *People* v. *Frank*, 28 Cal. 507.)

The judgment and order denying the motion for new trial are and each of them is affirmed.

Barnard, P. J., and Griffin, J., concurred.