Filed 10/8/13  P. v. Robinson CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | **A133703** |
| **v.** | |
| **DWAYNE LAVELL ROBINSON,** | **(Alameda County** |
| **Defendant and Appellant.** | **Super. Ct. No. 162995)** |

Defendant Dwayne Lavell Robinson (appellant) admitted firing several gunshots into a group of people, killing one and injuring two others, but claimed he acted in self-defense.  A jury disagreed, convicting him of second degree murder (Pen. Code, § 187, subd. (a)) and assault with a firearm (*id.*, § 245, subd. (a)(2)), and finding true firearms enhancements (*id.*, §§ 12022.5, subd. (a), 12022.53, subds. (b)-(d), 12022.7, subd. (a)). He now appeals, contending (1) the trial court erroneously denied his motion for a new trial based on a newly-discovered scene in surveillance video footage (footage) of the shooting, (2) aspects of the prosecutor's closing argument constituted prosecutorial misconduct, (3) the prosecution's failure to disclose the scene from the footage was a *Brady*[1] violation, and (4) a ruling precluding the use of two witnesses' prior convictions

---

[1]  *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

1

under Evidence Code section 1103 was prejudicial error. We reject appellant's contentions and affirm.

BACKGROUND

In the early morning hours of March 28, 2009, appellant fired several shots into a group of people standing outside a restaurant in Oakland. Vincent Choi was killed and Michael Voong and John Lu were wounded.

At trial, the prosecution called nine witnesses who were present at the shooting, including Voong, Lu, and three other friends with whom they and Choi had been socializing that evening. The four other witnesses had been socializing with appellant. The testimony of these nine witnesses varied in certain details, but consistently described the following chain of events. At the restaurant on the evening in question, a verbal altercation arose between the two groups, who had not previously met. At some point during the altercation, both groups left the restaurant. Most members of appellant's group began walking to their cars. Most members of the victims' group stood on the sidewalk outside the restaurant. Appellant walked down the sidewalk away from the restaurant, then took out a gun and fired several shots into the victims' group. Some witnesses heard him say "last chance" before he fired.

Two members of appellant's group testified that appellant then joined them in the back seat of a friend's car. The car made a U-turn, stopped in front of the restaurant, and more shots were fired. One of the two witnesses heard appellant say "stop" before the car stopped, and subsequently saw a gun on the floor near appellant's feet. Approximately five weeks after the shooting, this same witness told the police that he saw appellant pull a "smoking" gun back into the car. The second witness saw appellant retract his arm from the car window immediately after hearing the gunshots, and then heard the sound of an object dropping to the floor. In testimony at a previous hearing, she identified the dropped object as a gun.

None of the nine witnesses present at the shooting saw any member of the victims' group with a gun that evening.

Appellant testified that after the groups were outside the restaurant and most of his group had walked away, he saw Voong and four friends standing in a "V formation" facing appellant. Voong told appellant "you all need to cut," and appellant, feeling threatened, began to back away. Voong then reached in his waistband and appellant noticed a "bulge" in the front of Voong's waistband. Appellant pulled out his gun, loaded it, pointed it at Voong, and told Voong to stop and go inside.[2] Voong, with his hand still in his waistband, told appellant multiple times to "Bust that shit," which appellant understood "meant he was telling me to shoot." Voong then drew his hand out and, although appellant could not see exactly what was in Voong's hand, it looked like a gun. Appellant fired one shot "as a reflex." Voong pivoted toward the restaurant, then looked at appellant again, raised his arm, and began to rotate his shoulder. Appellant then fired approximately five shots at the group, stopping only because there were "no more bullets in the gun." Appellant ran to his friend's car, got inside, and they drove off.

The police found 11 casings and one bullet at the scene, and recovered two additional bullets from Choi's body. An expert specializing in firearm and tool mark examinations testified that the casings and bullets were all the same caliber and could have been fired from the same gun, but he was only able to determine that six of the casings were in fact fired from the same gun. He was unable to discern whether the remaining casings and the bullets were fired from the same gun or from a second gun. A police evidence technician testified that a number of bullet holes were found on the driver's side of a vehicle parked in front of the restaurant.

After appellant's arrest, he made several phone calls from jail which were monitored by an employee of the county sheriff's office. According to this employee's notes of the conversations, appellant told the recipient "Renee is my only alibi," "I left with Renee earlier, and that's it," and "Talk to Renee. We drove, and she left with me." Appellant admitted that in these calls he was trying to persuade his friend Renee to corroborate a fabricated alibi he had told the police, specifically, that he had left the

_____

[2] Appellant testified that he had brought a gun with him that evening because he had previously been the victim of several violent crimes.

3

restaurant before the shooting took place. During these phone calls, he also directed the recipient to tell a friend who was present at the shooting "to shut up" and "not to do me." Appellant admitted that he was trying to convince this friend not to talk to the police.

DISCUSSION

I. *The Video Footage*

A. *Procedural Background*

After his conviction but prior to sentencing, appellant filed a written motion for a new trial on the ground that certain evidence was improperly excluded. At the hearing, defense counsel orally raised an additional ground not included in the written motion: that there was newly-discovered evidence of a surveillance video scene from the night of the shooting showing someone other than appellant leaving the restaurant while holding a gun.

During argument on the motion, the prosecutor and defense counsel both agreed on the following. Prior to trial, defense counsel had been provided with a digital video or versatile disc (DVD) containing footage from the surveillance camera at the restaurant. Defense counsel subsequently requested the footage be produced on three video home system (VHS) tapes, its original format. At some point after trial began but before the close of evidence, defense counsel was provided with VHS tapes containing the footage.

Defense counsel contended the VHS tapes showed the footage "more clearly" than the DVD version. He also stated that he did not know whether the DVD contained "the entirety of the surveillance or what the People felt was relevant." The prosecutor claimed the DVD contained all of the surveillance footage, though he later said that he would need to "go look at discovery receipts if we would like to take a look at what was provided."

Defense counsel conceded that "theoretically I could have look[ed] at [the VHS tapes] during trial." However, he argued "there are three of them, they run for hours, and as a practical matter it would have been more helpful if I could have gotten my hands on them before trial started rather than when I am in the middle of trial and have other fish to fry besides sitting around looking at hours and hours of video footage."

4

The trial court declined defense counsel's offer to show the footage at the hearing. Defense counsel's only representation regarding its content was that "there is a scene where a fellow is going out the door and he appears to have a pistol in his right hand as he is going out the door," and "it is not [appellant] in the footage."

The trial court denied appellant's motion for a new trial, finding, in part, the footage "is really not, by law, a legally discovered new item of evidence because this evidence was provided to defense counsel prior to the close of evidence in this case, before the conclusion of the trial. And certainly counsel had every opportunity to avail himself of the use of that evidence . . . ."

B.      *Analysis*

" ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' [Citations.] ' "[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background." ' [Citation.] [¶] In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: ' "1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' [Citations.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

The trial court's denial of appellant's motion was not an abuse of discretion. Defense counsel conceded that he had the VHS tapes before the close of evidence. Although he asserted that he did not have time to watch the tapes in the middle of trial, he did not request a continuance to permit him to do so. The failure to seek a continuance to investigate potential newly discovered evidence constitutes a lack of reasonable diligence. (*People v. Clauson* (1969) 275 Cal.App.2d 699, 705 [finding the "[f]ailure to make such request [for a continuance], with knowledge of the existence and materiality of the evidence, was a fatal omission"]; *People v. Goodale* (1939) 33 Cal.App.2d 80, 88

[finding no due diligence when the defendant "proceeded throughout the trial without making any request for a continuance to enable her to search for" a witness whose availability was discovered on the first day of trial].)[3]  In contrast, in *U.S. v. Blueford* (9th Cir. 2002) 312 F.3d 962, relied upon by appellant, the defendant twice requested continuances to allow him to review audiotapes received during the trial.  (*Id.* at pp. 965-966.)

Further, the record does not support appellant's contention that there is a reasonable probability the footage would have resulted in a more favorable outcome at trial.  Appellant submitted no written evidence as to the substance of the footage.  Defense counsel's oral representation of the footage was solely that it depicted an individual other than appellant who "appears to have a pistol in his right hand as he is going out the door."  Defense counsel did not represent that the individual in the footage appeared to be a member of the victims' group, or indicate the time of the relevant scene — for example, whether it took place shortly before the shooting or hours after.

On appeal, appellant appended to his opening brief what are purportedly screen shots of the relevant scene.  But "[t]he scope of an appeal is limited to the record of the proceedings below" (*People v. Bean* (1988) 46 Cal.3d 919, 944), and neither the appended pictures nor the footage itself was part of the record before the trial court.  Even if we were to consider the pictures on this appeal, they would not help appellant's cause.  The content of the images is barely discernable and appellant's claim that he is not the pictured individual is entirely unsupported.  In addition, appellant still does not contend (nor is there any basis in the record for him to do so) that the individual is Voong or another member of the victims' group, or that the scene took place shortly before the shooting.  A scene of an unrelated individual, a member of appellant's group, or anyone after the shooting took place, would have had no impact on appellant's trial.

---

[3]   These cases refute appellant's unsupported contention that the relevant standard is whether a defendant could have discovered and produced the evidence "at the beginning of trial, not at the end of trial."

Finally, we note that appellant's motion was not procedurally proper. "When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given . . . ." (Pen. Code, § 1181, subd. (8).) Although defense counsel offered to show the footage to the trial court, appellant submitted no affidavits regarding the possible identity of the individual appearing on the video or the temporal relation between the video scene and the shooting. In addition, "[t]he defendant's lack of knowledge of the new evidence at the time of trial must normally be shown by his or her own affidavit." (6 Witkin, Cal. Criminal Law (4th ed. 2012) Criminal Judgment, § 129, p. 172.) Appellant submitted no such document from either himself or his counsel.

In sum, we affirm the trial court's denial of appellant's motion for a new trial, based on his claim of newly discovered evidence.[4]

## II. *Evidence Code Section 1103 Ruling*

### A. *Procedural Background*

In an in limine motion prior to trial, the People sought to preclude appellant from introducing evidence of prior convictions of Voong and another member of the victims' group, Douglas Dam. Voong had been convicted of a felony assault with a firearm in 2004, and Dam had been convicted of a felony assault with a deadly weapon in 2002. Appellant did not know of these convictions at the time of the shooting. The trial court ruled that appellant could elicit testimony about the prior convictions for the purpose of

---

**4**   Appellant's two other claims based on the footage are meritless. First, he contends it was prosecutorial misconduct for the prosecutor to assert in his closing argument that there was no evidence other than appellant's testimony that anyone in the victims' group had a gun. Second, he claims the prosecution's failure to disclose the footage prior to trial was a *Brady* violation. As discussed above, on this record appellant has failed to demonstrate that the footage shows a member of the victims' group holding a gun shortly before the shooting. Accordingly, appellant has not shown that the prosecutor's closing argument was factually inaccurate, nor has he shown that the evidence was exculpatory for purposes of *Brady*.

impeachment, but not as evidence of the witnesses' violent character under Evidence Code section 1103. Appellant argues this ruling was prejudicial error.

B. *Analysis*

Evidence Code section 1103, subdivision (a)(1) provides: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character."

We need not decide whether the trial court's ruling was error because, given the weight of the prosecution's evidence, any error would be harmless. Most significantly, not a single other witness present at the shooting — including appellant's friends — saw anyone other than appellant with a gun. The ballistics evidence was consistent with the firing of a single gun at the scene. There was no evidence at all to corroborate appellant's testimony that Voong had a gun that night, and the use of Voong's prior conviction as character evidence would not have changed that fact.

There was also evidence that appellant fired additional shots from a car as it was driving away, when appellant could not have been acting in self-defense regardless of the violent character of Voong or Dam. Witnesses in the car with appellant saw him retract his arm from the window immediately after shots were fired. Bullet holes on the driver's side of a car parked in front of the restaurant were consistent with shots being fired at the front of the restaurant from a passing car.

Moreover, appellant's conduct during the police investigation was inconsistent with his claim of self-defense at trial. Appellant did not initially tell the police that he fired his gun because he feared for his safety. Instead, he falsely told the police that he was not present at the shooting and attempted to procure a fabricated statement from a friend to corroborate this story. He further tried to ensure that a witness present at the shooting would stop talking to the police. Appellant undermined his own credibility with

8

his efforts to obstruct the police investigation, and the use of Voong's and Dam's prior convictions as evidence of their character would not have changed this.

Finally, appellant fails to explain how any evidence of Dam's propensity for violence would have added to appellant's case, as appellant claimed to have been threatened only by Voong.

In sum, it is not reasonably probable that use of the prior violent acts as evidence of a propensity for violence would have resulted in a more favorable outcome for appellant. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)[5]

DISPOSITION

The judgment is affirmed.

_____

SIMONS, J.

We concur.


_____

JONES, P.J.



_____

NEEDHAM, J.

---

[5] Appellant's cursory contention the trial court's ruling also violated his right to due process is not properly raised, as appellant "fails to provide any analysis or argument in support of the assertion." (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2.)