[Crim. No. 488.  First Appellate District.—May 19, 1914.]

THE PEOPLE, Respondent, v. YEE KING, Appellant.

CRIMINAL LAW—HOMICIDE—MISCONDUCT OF JURY IN VISITING SCENE OF CRIME—WHETHER GROUND FOR NEW TRIAL.—The fact that two jurors in a homicide case visit alone the scene of the crime during the progress of the trial, does not warrant a new trial, if it is not made to appear that they saw or heard at the place of the homicide anything different from or contradictory of the evidence adduced at the trial, or that their inspection resulted in an understanding of the evidence or any fact in the case in any wise different from that conveyed to them by the testimony of sworn witnesses and the details of the scene of the crime as depicted upon the diagram already in evidence at the trial.

ID.—MISCONDUCT OF JURY—HARMLESS ERROR.—Such misconduct is not *per se* sufficient to warrant the granting of a new trial; but prejudice must be shown to have followed, and in the absence of an affirmative showing of resultant injury to the defendant a verdict of guilty must stand.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.  George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Oliver Dibble, T. I. Fitzpatrick, and J. J. Greeley, for Appellant.

U. S. Webb, Attorney General, and John H. Riordan, Deputy Attorney General, for Respondent.

LENNON, P. J.—This is an appeal from the judgment and from the order denying a new trial in a case where the defendant was convicted of murder in the second degree and sentenced to scrve twenty years in the state prison.

The evidence adduced upon the entire case is substantially as follows: John C. Catlin, a witness for the people, testified that shortly before the commission of the homicide, at about the hour of 9 o'clock in the evening, he was walking down Stockton Street toward its intersection with Washington Street in San Francisco, in what is known as the Chinatown district. He came to the corner of Stockton and Washington Streets, and continued along Stockton Street about one hundred and twenty-five feet when he heard a shot, and turning around saw the forms of three men, one of whom seemed to be struggling with the other two. He turned back to the scene of the encounter. There were four more shots. The witness noticed the flashes directed toward the body of the one man who seemed to be struggling with the other two, and who, after a futile effort to ward off his assailants, fell to the ground mortally wounded. Thereupon the assailants turned and ran in a northwesterly direction across Stockton Street. Corporal Charles Goff, a police officer, who, at the moment of the shooting, was about half a block from the scene thereof, ran toward the point from which the report of the shots came, and saw two men running in a northwesterly direction. One wore a light gray suit and the other a dark suit. As he was pursuing them the man with the gray suit turned and fired. The officer, however, continued, and finally overtook him, whereupon the latter pointed his pistol at the officer's body, but, without firing, turned and continued his flight. The officer managed to fell him with a blow of his hand, and after a struggle arrested and handcuffed him. The man arrested was Yee King, the defendant in this case. The autopsy surgeon found three bullet wounds in the body of the deceased.

The defendant took the stand and admitted that he was present at the scene of the shooting, and also that he carried a revolver similar to the one taken from him by the arresting officer, but denied that he was one of the assailants of the deceased, claiming that he was merely an innocent by-stander. He admitted his flight, but stated that he fled because the two assailants of the deceased were about to attack him.

Incidentally it was shown in evidence that one Ah Moon, jointly charged with the defendant, was also arrested, while running from the vicinity of the crime, by police officers Nielson and O'Dowd at about the same time that officer Goff arrested the defendant.

In addition to the foregoing there is the testimony of three other witnesses, who were present in the vicinity of the homicide at the time the shots were fired, and thereafter saw the flight and arrest of Yee King and Ah Moon.

But one point is presented for reversal and that involves the refusal of the trial court to grant defendant's motion for a new trial, which was based entirely upon the grounds (1) "that the jury received evidence out of court other than that resulting from a view of the premises; (2) that the jury were guilty of misconduct by which a fair and due consideration of the case was prevented."

The several remaining grounds of the motion for a new trial were not pressed at the argument of the motion, and they are not presented for consideration upon this appeal.

In support of the grounds of the motion for a new trial hereinbefore specified certain affidavits were offered and received in evidence, wherein it was alleged that two of the jurors empaneled to try the cause had visited and viewed the scene of the homicide while the trial was in progress and before the taking of evidence had been concluded. Upon the hearing of the motion for a new trial special counsel for the people, while conceding the conduct of the two jurors in question to be as stated in the affidavits, objected that such conduct was not in and of itself sufficient to justify a new trial; and for that reason at first insisted that the motion be submitted for the court's decision upon the showing made by the defendant. The trial court, however, after stating that it had in mind the rule and its exceptions, that a juror will not be permitted to impeach his own verdict, suggested out of an

abundance of caution and in furtherance of justice, that the two jurors in question should be sworn and interrogated concerning the motive for their visit to the scene of the homicide and their conduct while there. Finally counsel for the people consented to this course, and also stipulated that such testimony might be considered as the equivalent of additional affidavits upon the question in controversy.

Under the circumstances of the present case the procedure suggested and adopted was not only proper (*People* v. *Chin Non*, 146 Cal. 561, [80 Pac. 681]), but does credit to court and counsel; and they are indeed to be commended for the caution and liberal sense of justice thus displayed. Thereupon the jurors in question were sworn; and the examination developed the following facts: During a noon recess in the trial of the case jurors E. B. Lindauer and John T. Welby met, and walked to the scene of the homicide, and while there "for a second or two" discussed certain features of the case to the extent of commenting upon and pointing out to one another certain objects and locations which were designated and delineated upon a detailed diagram of the scene of the homicide previously offered and received in evidence upon the actual trial of the case. Both jurors testified that they did not disclose the fact of their visit to the scene of the homicide to their fellow jurors, and that the incident was not subsequently referred to or discussed in or out of court at any time during the actual trial of the case or while the jury was deliberating upon the verdict.

It is not only conceivable but ordinarily very likely that an unauthorized view by jurors of the scene of a crime will result in the acquisition of material knowledge for or against the defendant concerning many essential features of a case which may be contrary to that conveyed by the evidence adduced at the trial. In such a situation it would indeed be difficult to say that the verdict of the jury was not induced in part at least by evidence received out of court other than that resulting from an authorized view of the premises. Such, however, is not the situation in the present case. The record shows that the jurors in question, upon their visit to the place of the crime, noted and commented only upon matters and things which had been previously presented for·their consideration by the evidence adduced at the trial in open court.

In short, the showing made upon the hearing of the motion for a new trial merely developed the fact that the unauthorized evidence received out of court was in effect but a reproduction of certain particular evidence previously adduced in court. No affirmative showing was made in the affidavits or by the testimony received upon the hearing of the motion for a new trial, that the two jurors in question had seen or heard at the place of the homicide anything different from or contradictory of the evidence adduced at the trial; or that their unauthorized inspection of such place had resulted in an understanding of the evidence in the case concerning the relative situation of the parties and witnesses to the homicide, or any other fact in the case, which was in any wise different from that conveyed to them by the testimony of sworn witnesses and the details of the scene of the crime as depicted upon the diagram already in evidence at the trial.

This being so, it cannot be fairly said that the showing made in support of the motion for a new trial would have warranted the court below in finding that the visit of the two jurors to the scene of the homicide resulted in substantial injury to the defendant. That such visit was an irregularity amounting to serious misconduct must be conceded; but such misconduct is not *per se* sufficient to warrant the granting of a new trial. Prejudice must be shown to have followed; and in the absence of an affirmative showing of resultant injury to the defendant in the present case the verdict must stand. (*People* v. *Hope,* 62 Cal. 291; *People* v. *White,* 20 Cal. App. 156, [128 Pac. 417]; *People* v. *Kramer,* 117 Cal. 647, [49 Pac. 842]; *State* v. *Perry,* 121 N. C. 533, [61 Am. St. Rep. 683, 21 S. E. 997]; *State* v. *Tilghman,* 33 N. C. 513.)

The judgment and order appealed from are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 12, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1914.