[Civ. No. 7944. Second Appellate District, Division Two.—September 28, 1933.]

J. M. WALTER, Respondent, v. KRIKOR H. AYVAZIAN, Appellant.

Purpus & Hiss for Appellant.

Perry G. Briney and Arch E. Ekdale for Respondent.

CRAIG, J.—In an action for damages alleged to have been caused by the careless and negligent operation at excessive

speed of an automobile, a verdict and judgment were rendered in favor of the plaintiff. ■ The defendant filed a notice of appeal under the alternative method "from the verdict given and the judgment herein made and entered, and all the decisions and orders of the judge made in said action, and in the decision and order entered on the proceedings for a motion for new trial". None of the decisions or orders appearing of record herein were subject to appeal, nor is there a right of appeal from the verdict of the jury. As to all else except the judgment, the appeal must be dismissed.

■ While the plaintiff and his wife were approaching an intersection of public streets in their automobile the defendant drove his car against the same, causing injuries to Mrs. Walter from which she did not recover. The plaintiff testified that he approached the safety zone at a moderate rate of speed, began to signal with his hand at a distance of about 148 feet before attempting to turn that he intended to change his direction; that he slowed down to about six or seven miles per hour; that there was "traffic coming both ways from behind and facing me, to the east and west . . . ; and I held out my hand to make that turn, and after I got to about the middle of the street on Armacost, this man Ayvazian came from behind and hit my car before I had made my turn"; that between the first and second impacts his car was carried possibly 12 or 15 miles per hour a distance of about 35 feet. He further swore that the defendant later had said that he "started to pass me on my left, and when he saw my hand extended this way he didn't think he could make it and pulled his car through to the right, and struck me on the right of my car". A disinterested witness testified that he saw the defendant's machine before the accident and that it was traveling at about 40 miles per hour after the first impact. If believed by the jury, this and other evidence which need not be recited was sufficient to justify them in rendering their verdict in favor of the plaintiff upon the cause as alleged in his complaint.

■ During the qualification of prospective jurors the question was asked as to whether or not a candidate for the jury or any of his family had an interest as stockholder or employee of an insurance company or insurance

broker, to which objection was interposed, which objection was sustained and the question was stricken out as to the broker. The appellant calls attention to argument of his counsel upon a motion to disqualify all jurors present, and to the question by the court if said action involved an insurance company, to which the respondent's counsel replied, "not as far as the title of the case shows". The juror answered the question in the negative, all jurors were instructed that if any reference had been made to an insurance company all remarks of counsel and the court should be disregarded, and said motion was denied. The effort to obtain impartial jurors was not improper, as the plaintiff was entitled to know whether or not they might in the manner indicated be interested in the outcome of his action. (*Murphy* v. *Shaffer*, 58 Cal. App. 453 [208 Pac. 1003].)

A more serious question was presented upon the motion for a new trial by evidence of a communication by one of the jurors with a physician after the case had been delivered into their hands for deliberation. Expert witnesses had testified that under the described conditions a sudden impact of a vehicle in which the deceased was riding might cause an affection of the kidneys, that she was found to have suffered such affection, and that the demise of one so injured to the extent revealed by her examination would probably result. One of the symptoms by which these doctors determined and gave their conclusion was excessive blood pressure, which they swore was found to be about 190. Other physicians had in turn testified that the family history showed a nephritic condition "when she was quite young, approximately in her twenties", and "running all the way down the family"; that nephritis had been diagnosed as based on increased blood pressure, but that he had told her "as far as that test was concerned she would live many years, unless nature disturbed that balance". It was shown by some of the witnesses that death was hastened if not produced by conditions resulting from the accident; by others that the primary cause was uremia, and that it was "very highly improbable" that it resulted from the accident. By the affidavits of the juror mentioned and of other jurors as well as a physician, it was made to appear that "during the time the jury was considering its verdict . . . she had consulted with a doctor regarding the case at bar as to the

disease 'uremia' and that she was satisfied in her own mind as to the verdict she was going to give"; that she had called the physician on the telephone and inquired "if 190 was a dangerous blood pressure, and he, the affiant, said it was". By the affidavit of one of said jurors it appeared that she stated to the jury thereafter during deliberations "that because of a conflict in the testimony of the doctors relative to blood pressure, affiant called her family doctor to determine what he thought about high blood pressure". Neither the impropriety nor the possible prejudicial effect of such conduct is seriously minimized by counsel for the respondent. It has been said that in order to warrant setting aside a verdict for misconduct it must appear that prejudice resulted therefrom. (*Saltzman* v. *Sunset Tel. & Tel. Co.*, 125 Cal. 501 [58 Pac. 169].) Yet here we have direct and positive evidence solicited and received by a juror from an outside source upon a question which had been made material to the principal issue and submitted to the jury for their determination as a question of fact upon which to base their verdict, and upon which fact qualified expert witnesses in the case had differed. The courts are giving more and more scrutiny to the fairness or unfairness of the means employed in presenting issues. Each case must be decided on its own merits, much depending upon the issues, the parties and the general atmosphere of the case. (*Perez* v. *Wilson*, 86 Cal. App. 288 [260 Pac. 838].) Certain experiments by jurors, viewing of premises, and examination of exhibits not in evidence but acquired by them, have been held the equivalent of such taking of evidence out of court and deprivation of the constitutional right of the presence of parties, without the possibility of knowledge on the part of the latter, or of contesting the reliability of such information, as to require a new trial. (*Higgins* v. *Los Angeles Gas & Electric Co.*, 159 Cal. 651 [115 Pac. 313, 34 L. R. A. (N. S.) 717] ; *Tunmore* v. *MacLeish*, 45 Cal. App. 266 [187 Pac. 443].) "It is a fundamental rule that all evidence shall be taken in open court, and that each party to a controversy shall have knowledge of, and thus be able to meet and answer, any evidence brought against him." (*Higgins* v. *Los Angeles Gas & Electric Co., supra.*) It is not conceivable that the expert opin-

ion of one in whom a juror must be said to have greater confidence than is manifested toward strangers under oath could withstand that degree of scrutiny as to fairness which guarantees the rendition of a just verdict, uninfluenced by outside evidence. ■ As properly contended by the respondent, jurors may not be heard to deny or to assert improper influences which might have affected their judgment upon the issues before them, in an endeavor to impeach their verdict. (*Saltzman* v. *Sunset Tel. & Tel. Co., supra.*) Nor may affidavits of third persons be used to prove admissions of such jurors to the same effect. (*Siemsen* v. *Oakland, S. L. & H. Elec. R. R.*, 134 Cal. 494 [66 Pac. 672].) Prejudice on the part of a juror may not be shown by the affidavit of the foreman nor by that of the defendant's attorney. (*Davilla* v. *Liberty Life Ins. Co.*, 114 Cal. App. 308 [299 Pac. 831].) But all that is claimed by the appellant to have constituted prejudicial misconduct is fully supplied by the affidavit of the physician, that on the morning in question said juror "consulted him in reference to blood pressure, and she asked him if one hundred and ninety (190) was a dangerous blood pressure; and he, the affiant, said it was". Disregarding other evidences of the reprehensible conduct of the juror for the purposes of decision of the instant question, proof of the same having properly been presented it does not require more. (*Tunmore* v. *MacLeish, supra.*)

From the views expressed it follows that the judgment must be reversed. An examination of the instructions of which complaint is made does not disclose reversible error. Much has previously been said of attempted appeals from nonappealable orders, and the burdening of the record with unnecessary discussion of matters reviewable upon appeal from the judgment. ■ Owing to recent repetitions of such practice and the necessity for dismissals it again becomes incumbent upon us to call attention to an amendment of section 963 of the Code of Civil Procedure in 1915, since which time an appeal does not lie from an order denying a new trial. (*H. G. B. Alexander & Co.* v. *Martz*, 107 Cal. App. 277 [290 Pac. 300]; *Estate of Ivey*, 110 Cal. App. 561 [294 Pac. 420]; *Berthrum* v. *Krumm*, 109 Cal. App. 5 [292 Pac. 287].)

The judgment is reversed. The appeal from the order denying a new trial is dismissed.

Works, P. J., and Stephens, J., concurred.