[Civ. Nos. 17629, 17621. Second Dist., Div. Two. Dec. 8, 1950.]

MERCEDES KRITZER et al., Plaintiffs and Appellants, v. JESSE CITRON et al., Defendants and Appellants.

Morris Abraham and Louis H. Zimmerman for Plaintiffs and Appellants.

Reed & Kirtland, Robert E. Moore, Jr., and Henry E. Kappler for Defendants and Appellants.

MOORE, P. J.—Plaintiffs sued defendants for damages resulting from an alleged, unauthorized operation upon Mrs. Kritzer following delivery of her third child. A jury having denied them relief, plaintiffs' motion for a new trial was granted on the ground of misconduct of the jury. After defendants had appealed from the order, plaintiffs appealed from the judgment entered upon the verdict.

The primary issue at the trial was whether Dr. Citron was privileged as physician in charge to perform a sterilization operation following a normal birth. A poll of the jury revealed that the members stood 10 to 1 for defendant with one juror not voting. Thereafter it was ascertained that the non-voting juror, a Mrs. Barman, had at a social event contacted her own physician, one Doctor Silton who was then engaged in the practice of obstetrics and gynecology in the city of Los Angeles. According to Doctor Silton's affidavit, introduced by the Kritzers in support of their motion for a new trial, Mrs. Barman asked many hypothetical questions relative to the proper practice in performing a sterilization after childbirth;

the reasons for such operation; who is best qualified to judge as to its necessity; whether the consent of the patient and her husband are essential; whether toxemia is a medical indication for sterilization. The doctor further deposed that at the time of such conversation with Mrs. Barman he had no knowledge that she was sitting on a jury which had under consideration a set of facts involving the problems comprehended in her questions to him. By reason of the contents of the affidavit the motion for a new trial was granted.

It is well established throughout the states of the union and in the federal courts that it is misconduct for a juror during the trial to discuss the matter under investigation outside the court or to receive any information on the subject of the litigation except in open court and in the manner provided by law. Such misconduct unless shown by the prevailing party to have been harmless will invalidate the verdict. (*Mattox* v. *United States,* 146 U.S. 140, 150 [13 S.Ct. 50, 36 L.Ed. 917]; *People* v. *Stokes,* 103 Cal. 193, 198 [37 P. 207, 42 Am.St.Rep. 102]; *People* v. *McCoy,* 71 Cal. 395, 397 [12 P. 272]; *Walter* v. *Ayvazian,* 134 Cal.App. 360, 365 [25 P.2d 526]; *Tunmore* v. *MacLeish,* 45 Cal.App. 266, 269 [187 P. 443]; 20 Cal.Jur., New Trial, § 36, p. 57.)

The importance of an open-minded jury cannot be over-emphasized, nor can the offense of a juror in seeking evidence upon the issue to be determined by interrogating an expert at a social function be for any reason palliated. It is a rule to be observed by every person who takes the oath of a juror that all evidence must be received in open court to the end that each party to the controversy may have full knowledge of the evidence against him and thus be enabled to test it by cross-examination and to make such answer as he may deem advisable. (*Higgins* v. *Los Angeles Gas & Electric Co.,* 159 Cal. 651, 656 [115 P. 313, 34 L.R.A.N.S. 717].)

But no prejudice was caused by the deflection of the wayward juror at the trial of the instant cause. While she did attempt to acquire pertinent information from a learned physician while refreshing herself among friends it is not shown that she imparted any of it to her fellow jurors. And what is more, she did not vote on the verdict. Inasmuch as nine may determine the factual matters submitted to a jury and that ten did vote for the defense, the verdict was not infected by the illegal act of the offending juror either by her conversation or her vote. Nine jurors filed affidavits that Mrs. Barman did not communicate the fact of her interview

with Dr. Silton. ■ They were not considered by the court under the rule that the affidavit of a juror will not be received to show whether the misconduct of a fellow juror did or did not influence the jury's deliberations and decision. (*People* v. *Stokes,* 103 Cal. 193, 196 [37 P. 207, 42 Am.St.Rep. 102]; *Kimic* v. *San Jose-Los Gatos Interurban Railway Co.,* 156 Cal. 379, 397 [104 P. 986]; 93 A.L.R. 1449-note.) Defendant contends that the affidavits were competent to substantiate the verdict, citing *Wilson* v. *Berryman,* 5 Cal. 44 [63 Am.Dec. 78]; *Saltzman* v. *Sunset Telephone & Telegraph Co.,* 125 Cal. 501 [58 P. 169]; 24 Cal.Jur., Trial, § 126. These authorities merely support the proposition that juror's affidavits may be received only for the purpose of showing no misconduct was present.

Plaintiffs rely upon *Walter* v. *Ayvazian,* 134 Cal.App. 360, 365 [25 P.2d 526]. During deliberations in that case the juror made telephonic inquiries of her physician as to the effect of a certain blood pressure, which was material to the principal issue at bar. It is not authority here. Prior to the return of the verdict the other jurors came into possession of the information which had been gained by their companion by use of the telephone.

Inasmuch as it is incumbent upon the plaintiffs to prove, and since they have failed to show that they suffered prejudice by reason of the juror's misconduct, the order granting the motion for a new trial must be reversed.

## The Judgment Is Without Error

By reason of her high blood pressure, infected kidney and painful, swollen legs, Mercedes Kritzer was ordered to the hospital on May 11, about two weeks prior to the date of the anticipated birth of her child. Pursuant to the ministrations of defendant, Mercedes commenced to labor about 11:00 p. m. but without success. On the following morning the doctor concluded that a Caesarean section was necessary and after his conversation with plaintiffs they agreed that she should also be sterilized at that time. Such course was recommended by defendant because of Mercedes' suffering from a condition known as eclampsia, or a toxemia of pregnancy, a condition from which she had apparently suffered in connection with two prior pregnancies. It was also the defendant's opinion that because of the blood pressure and kidney infection the patient could not reasonably withstand future pregnancies. Plaintiffs then executed a written document assenting to the

performing of "whatever operations may be decided to be necessary or advisable" and demanded that the sterilization be performed. Shortly thereafter, however, as the doctor was preparing for surgery, the baby was delivered spontaneously. Defendant then conferred with the patient in regard to his proceeding with the surgery. Again she gave her consent. The operation was then performed.

Plaintiffs now urge a reversal of the judgment upon four grounds—a consideration of which discloses that the appeal from the judgment is without merit.

### Evidence Supports Verdict

An action for injuries resulting from a surgeon's performance of a successful operation is founded upon the theory of an assault; that is the operation was without the plaintiff's consent. Here we have the written consent of both plaintiffs to the operation. They contend, however, that the written consent was conditioned upon defendant's first having performed the Caesarian section. This is contrary to the testimony of the doctor that during the interim between the birth and the surgery, Mrs. Kritzer consented to the sterilization. In this he was corroborated by Dr. Grover, the anaesthetist who testified that he witnessed the conversation and that Mercedes was conscious and rational at the time. Although appellants also assert that the consent of both husband and wife was necessary, they cite no authority in support of such proposition. On the contrary, the consent of the patient alone is sufficient. (See *State, Use of Janney* v. *Housekeeper*, 70 Md. 162 [16 A. 382, 384, 14 Am.St.Rep. 340, 2 L.R.A. 587] ; *Barker* v. *Heaney* (Tex.Civ.App.), 82 S.W.2d 417, 420; *Rytkonen* v. *Lojacono,* 269 Mich. 270 [257 N.W. 703, 705] ; *Burroughs* v. *Crichton,* 48 App.D.C. 596.)

### No Error in Giving Instruction on Consent

There was no error in giving the instruction* that the jury might find the consent, express or implied, to have been

---

*"The plaintiffs have charged that the operation which was performed in this case was performed without first obtaining their consent. In this regard I instruct you that it is not necessary, in order to give a valid, legal consent to the performance of an operation, that any particular formalities must be used. If you believe from the evidence that the consent of the plaintiffs, express or implied, was obtained .in this case, then your verdict must be in favor of the defendant, on the question of consent; on the other hand, if you believe from the evidence that the consent of the plaintiffs, express or implied, was not obtained in this case, then your verdict must be in favor of the plaintiffs on the question of consent."

obtained. It is elemental that consent may be manifested by acts or conduct and need not necessarily be shown by a writing or by express words. (Civ. Code, § 1581; Rest. Law of Torts, vol. 1, p. 98; Prosser on Torts, § 18, p. 118.) The jury was privileged to infer a consent from the facts that plaintiff submitted to the operation without objection and from the testimony that Mr. Kritzer made no protest when he was advised that the operation followed a normal birth. Plaintiffs' argument that consent may be implied only where an emergency exists overlooks the fact that in an emergency situation where a doctor is privileged to proceed with necessary surgery, there is actually no consent whatsoever to an invasion of the patient's interests. Any language in the decisions that there is such an implied consent in such circumstances is an obvious fiction. In reality, the person whose right is invaded has not by word or act expressed any actual or apparent assent. (Rest. Torts, § 62.) Thus, both consent and emergency constitute two separate and distinct defenses to this type of action.

No Error in Refusing Plaintiffs' Requested Instructions

 Plaintiffs urge that the court erred in refusing to give a number of instructions requested by them during the course of the trial. However, they have failed to cite any authority in support of the correctness of such instructions. Under the circumstances the refusal to instruct as requested will be deemed without prejudice. (*State* v. *Day,* 76 Cal.App.2d 536, 552 [173 P.2d 399]; *Miller* v. *Dollar Steam Ship Lines,* 19 Cal.App.2d 206, 213 [64 P.2d 1163].) Error in the giving or refusing instructions is never presumed. The burden is at all times on the appellant to show that it exists. (*Arnold* v. *Producers Fruit Co.,* 141 Cal. 738, 744 [75 P. 326]; *Semple* v. *Andrews,* 27 Cal.App.2d 228 [81 P.2d 203].) Moreover, a reading of the refused instructions indicates that no prejudice resulted from their rejection as a number are covered by other instructions, are on immaterial matters or attempt to place the burden of proof of showing consent to be on the defendants. However, it is established that where the lack of consent is an essential element of the tort, the defendant need not specially plead consent affirmatively but its lack may be shown under a general denial. (6 C.J.S. Assault & Battery, § 37, p. 848.) The burden of proving lack of consent is on the plaintiff when he has alleged that it was not present. (*State, Use of Janney* v.

40

*Housekeeper, supra,* [16 A.] p. 384; *Barfield* v. *South Highland Infirmary,* 191 Ala. 553 [68 So. 30, 36, Ann.Cas. 1916C 1097] ; *Knowles* v. *Blue,* 209 Ala. 27 [95 So. 481, 487].) ''The absence of lawful consent,'' said Justice Holmes, ''is part of the definition of an assault.'' (*Ford* v. *Ford,* 143 Mass. 577, 578 [10 N.E. 474].) At least in an action for a technical assault and battery, as is the case at bar, this burden should not be on the defendant when, from the very fact that the plaintiff has placed herself under the care of the surgeon, consent is presumed.

NO PREJUDICIAL ERROR IN COURT'S COMMUNICATION
WITH BAILIFF

Finally, plaintiffs contend that the judgment should be reversed because the court communicated with the jury through the bailiff. According to the Narrative Statement the bailiff informed the court that the jury desired to see the transcript of Dr. Citron's testimony with respect to the patient's kidney condition. Upon learning from the reporter that no transcript had been prepared the court instructed the bailiff to ''tell the jury that there was no written transcript of that testimony and they would have to come back to the courtroom and have the reporter read the testimony to them.'' The jury did not request that they be conducted back to the courtroom and apparently did not consider a rehearing of such testimony of sufficient importance to have it read. Conceding there was an irregularity, it is not shown that prejudice could have resulted to plaintiffs. Accordingly, there is no reversible error present. (Cal. Const., art. VI, § 4½; *Tice* v. *Pacific Electric Railway Co.,* 36 Cal.App.2d 66, 73-4 [96 P.2d 1022, 97 P.2d 844].)

The order granting the motion for a new trial is reversed. The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied December 27, 1950, and plaintiffs and appellants' petition for a hearing by the Supreme Court was denied February 5, 1951. Carter, J., voted for a hearing.