[Civ. No. 20333.   First Dist., Div. Two.   July 15, 1963.]

BEVERLY ANDERSON et al., Plaintiffs and Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

LOIS LENTZ et al., Plaintiffs and Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

(Consolidated Cases.)

Herron & Winn, Hill & Dalton, John Wynne Herron and John M. Dalton for Plaintiffs and Appellants.

Richard H. Peterson, R. A. Raftery, Noel Kelly, Hill & Hill and Clayton O. Rost for Defendant and Respondent.

SHOEMAKER, J.—This is a wrongful death action brought by the surviving heirs of Leland Anderson and Larry Lentz, two members of the Ferndale Volunteer Fire Department who were killed while attempting to extinguish a fire on Coppini Lane near Ferndale, California. Plaintiffs alleged that the defendant, Pacific Gas and Electric Company, had installed along the east side of Coppini Lane certain uninsulated electric wires carrying high voltage current up to approximately 12,000 volts; that the defendant had maintained these wires in such a negligent manner as to allow a cypress hedge below the wires to grow into, around and in contact with the wires, thereby concealing them from view; that on February 2, 1959, at approximately 8:45 in the evening, a fire was discovered in the hedge, and the Ferndale Volunteer Fire Department promptly responded to the alarm and attempted to extinguish the blaze; that plaintiffs' deceased were electrocuted when the ladder which they were using came into contact with certain of the wires buried in the hedge.

The defendant answered, denying negligence and affirmatively pleading contributory negligence and assumption of

risk on the part of plaintiffs' deceased. After a trial by jury, verdict and judgment were for the defendant.

On this appeal, plaintiffs' sole contention is that two separate instances of misconduct by certain jurors deprived them of a fair trial. They assign as error the denial of their motion for a new trial based upon that ground.

The first instance of misconduct on which appellants rely was the unauthorized viewing of the scene of the fire by two of the jurors. In support of their motion for new trial, appellants filed affidavits by three persons who were *not* members of the jury to the effect that they had seen juror Larson at the scene of the fire on January 29, 1961, the day before the case was submitted to the jury. Affiant Donald Coppini, who had testified for appellants at the trial, averred that he had pointed out to juror Larson the location of certain electric power poles, the area where the cypress hedge had formerly been located, and the spot where the fire had started within the hedge. He also informed him that certain power poles had been replaced since the fire and that the height of the present poles and the wires suspended from them had been changed since the fire. Affiants Pegolotti and Wright both averred that they had seen juror Larson at the scene of the fire on the date in question and had overheard portions of the discussion between him and Coppini relative to the replacement of certain power poles and the type of cypress hedges which grew in the area.

In addition, appellants filed affidavits by members of the jury to the effect that juror Larson had informed the other jurors, during deliberations, of his visit to the scene and had related his observations and impressions. These affidavits further averred that another member of the panel, juror Mullin, had informed the other jurors that he had also made a visit to the scene of the fire.

In opposition to appellants' motion for new trial, respondent filed the affidavit of juror Larson admitting that he had visited the scene and had there entered into a discussion with Donald Coppini, who had shown Larson where the hedge had been and had pointed out that a new power pole, which was higher than the old one, had been installed since the fire. Larson averred that the statements made by Coppini did not vary from the testimony which he had already given at the trial. He further averred that his visit to the scene did not enable him to form any impression of how the acci-

dent had occurred because he realized that the entire scene had since been changed. He denied that he had informed the other jurors of any of the particulars of his visit other than the fact that many changes had taken place and nothing about the case could be learned from viewing the scene. Respondent also filed the affidavits of several jurors to the effect that their verdict had not been affected by Larson's comments, that nothing he had told them differed from the evidence presented at the trial, and that he had told them only that the area had been completely changed since the accident.

Upon motion by appellants, the trial court struck out, in its entirety, the affidavit of juror Larson and those portions of the other jurors' affidavits to the effect that Larson's comments were consistent with the evidence and had had no effect on their verdict.

Appellants now contend that the trial court abused its discretion in denying a new trial in the face of the uncontroverted evidence of misconduct on the part of jurors Larson and Mullin.

In discussing this argument, it must first be noted that the only evidence of Mullin's trip to the scene consisted of affidavits by other jurors to the effect that he had told them of such a visit. It is settled that affidavits of jurors may not be used to impeach a verdict. (*Kollert* v. *Cundiff* (1958) 50 Cal.2d 768, 772 [329 P.2d 897].) Since the evidence of Mullin's misconduct was clearly inadmissible, it could not be considered by the trial court in ruling upon appellants' motion for new trial. (*Sopp* v. *Smith* (1963) 59 Cal.2d 12, 14 [27 Cal.Rptr. 593, 377 P.2d 649].)

Appellants were successful, however, in establishing juror Larson's misconduct by independent evidence in the form of affidavits by three persons who were not members of the jury. There can be no doubt that Larson's visit to the scene constituted the taking of evidence out of court in violation of his duty as a juror. (*Walter* v. *Ayvazian* (1933) 134 Cal.App. 360, 364 [25 P.2d 526]; *Kritzer* v. *Citron* (1950) 101 Cal.App.2d 33, 36 [224 P.2d 808].) Our question is—whether misconduct so established warrants the application of an exception to the general rule.

It is settled that those affidavits averring that Larson and his fellow jurors were in no way affected by his misconduct were properly stricken by the trial court. The affidavits of jurors may not be received as evidence that the misconduct of one of their number did not influence their delib-

erations or decision. (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.* (1909) 156 Cal. 379, 397 [104 P. 986].) ▇ Although there is some authority that those portions of Larson's affidavit describing his visit to the scene and his conversation with Coppini were admissible for the purpose of explaining his misconduct (*People* v. *Yee King* (1914) 24 Cal.App. 509, 511-513 [141 P. 1047] ; *Kimic* v. *San Jose-Los Gatos etc. Ry. Co., supra,* at p. 397), we are satisfied that the striking of the entire affidavit could have had no effect on the trial court's ruling on appellants' motion for a new trial, for Larson's affidavit contained no factual matters which were not included in the affidavits of Coppini, Pegolotti, and Wright.

The question remains, however, as to whether the affidavits of the other jurors, although inadmissible for the purpose of negating any effect on their verdict, were competent evidence that Larson had in fact communicated the information which he acquired at the scene to the other members of the panel. Appellants concede that jurors' affidavits may not be used to establish the misconduct of one of their number. They strongly urge, however, that where, as in the instant case, such misconduct has been shown by evidence from independent sources, the affidavits of members of the jury are admissible for the limited purpose of proving the fact of communication and the resultant likelihood that the misconduct was prejudicial.

The parties have directed this court's attention to no California case deciding this precise point. In *People* v. *Yee King, supra,* the court, in holding that an unauthorized visit to the scene had resulted in no genuine prejudice, appears to have relied in part on statements by the offending jurors to the effect that they had not disclosed the fact of their visit to their fellow jurors. However, in the subsequent cases of *Walter* v. *Ayvazian, supra,* and *Kritzer* v. *Citron, supra,* the court declined to consider jurors' affidavits relative to the fact of communication, even though juror misconduct had already been established by the affidavits of nonjurors. In the light of these authorities, it is at best extremely doubtful that the affidavits of jurors are admissible even for the limited purpose urged by appellants.

▇ However, even if it be assumed that the fact of communication was established in the present case, it does not follow that appellants were prejudiced thereby. The affidavits of Coppini, Pegolotti and Wright do not indicate that juror Larson acquired any information at the scene other

than that many changes had taken place. The fact that respondent had installed new power poles of a different height would appear to be more beneficial than detrimental to appellants, since it supports the inference that the old poles were deemed inadequate in some manner. Moreover, the only person whom Larson consulted during his visit to the scene was a relative of one of the appellants who had already testified on their behalf. The trial court, in denying a new trial, emphasized the fact that such an encounter would be highly unlikely to result in prejudice to appellants. This reasoning would appear sound. ■ Furthermore, appellants have failed to provide this court with either a reporter's transcript or a copy of the instructions to the jury. Under such circumstances, it is impossible to ascertain whether Larson's visit to the scene could have had a significant bearing on the outcome of the case. Since the trial judge had all the evidence before him and was thus in a far better position to evaluate the prejudicial effect of Larson's misconduct, this court cannot say that the denial of a new trial constituted error. (*Woods* v. *Pacific Greyhound Lines* (1949) 91 Cal.App.2d 572, 577-578 [205 P.2d 738]; *Sopp* v. *Smith, supra,* at p. 15.)

Appellants' second and final assignment of error is predicated upon the misconduct of juror Ramey in concealing a prejudice or bias against appellants which purportedly existed prior to her *voir dire* examination. In support of their motion for new trial, appellants filed the affidavits of several jurors averring that juror Ramey had made the following statements to members of the jury during the trial: that she knew John Herron, one of appellants' attorneys, and that he was an ambulance chaser; that the New York Life Insurance Company was backing appellants' case and would receive $80,000 from the award; that she knew appellants came from wealthy families and would be well taken care of financially; that she knew that one of the appellants was the recipient of a double indemnity insurance policy on the life of her husband; that she knew two of appellants' witnesses and that a person could not believe anything they said; that she knew that respondent was not insured; that in the recent past the Ferndale Volunteer Fire Department had been called to a blaze at the Ramey Stud Mill; that during the course of the trial she had talked to someone outside of court, and if "something" did not come out in evidence, she would disqualify herself. These affidavits also averred that juror

Ramey had given the impression through what she said that she possessed a large portion of this information prior to being called as a juror. (Subsequent certified statements from many of these affiants limit the extent of the remarks and the time of their making.)

■ Affidavits of jurors are clearly admissible to show that bias or disqualification of a juror was concealed by false answers on *voir dire.* (*Williams* v. *Bridges* (1934) 140 Cal. App. 537 [35 P.2d 407]; *DeWit* v. *Glazier* (1957) 149 Cal. App.2d 75, 81 [307 P.2d 1031].) ■ Unquestionably juror Ramey stated during her *voir dire* examination that she had an impartial frame of mind; that she would decide the case solely upon the evidence; that she would be fair and square to both sides; and that there was nothing which could possibly affect her judgment which she should tell the attorneys. Appellants contend that these answers must be deemed false in view of the fact that juror Ramey was then possessed of information which had seriously biased her against appellants and in favor of respondent.

This contention may not be sustained. Those portions of the jurors' affidavits averring that juror Ramey gave the impression that she possessed much of her information prior to being called as a juror are mere conclusions without evidentiary value. (*Shipley* v. *Permanente Hospital* (1954) 127 Cal.App.2d 417, 424-425 [274 P.2d 53, 48 A.L.R.2d 964].)[1] ■ Although it is true that the earlier existence of prejudice on the part of a juror may be inferred from his utterances in the juryroom, the trial court in the instant case chose to believe the affidavit of juror Ramey, which denied making certain of the statements attributed to her, while admitting that she did say some things concerning the parties after the verdict had been voted. Juror Ramey stated, more specifically, that she knew no facts concerning the case and had no prejudice for or against either party before being selected as a juror; that her information concerning appellants' finances, the New York Life Insurance Company, and Herron's alleged reputation as an ambulance chaser were acquired at a Chamber of Commerce dinner which she attended during the trial; that people at the dinner discussed the case because they had read that she was a juror; that she did not initiate the conversations and had no way of avoiding

[1]This case was disapproved on another ground. (*Kollert* v. *Cundiff, supra,* at p. 773.)

hearing the various remarks; that she thereafter thought of reporting the matter to the judge, but concluded that it would have no effect on her verdict. She further averred that there had been a fire at her brother's home in Ferndale prior to the trial, but that she knew nothing of the details concerning it.

Under these circumstances, a question of fact for the trial court was clearly presented. In resolving this conflict in favor of juror Ramey, the court, in denying appellants' motion for new trial, stated that there had been no showing that whatever knowledge juror Ramey possessed of the fires at the stud mill and her brother's home had prejudiced her or that she had intentionally concealed these matters on *voir dire*. The court stated that the remainder of juror Ramey's remarks to her fellow jurors were based upon information acquired during the trial and that the jurors' affidavits pertaining thereto were accordingly inadmissible.

It is settled that a trial judge's conclusion in granting or denying a new trial will not be disturbed unless, under all the circumstances appearing, it is plainly wrong. (*Lafargue* v. *United Railroads* (1920) 183 Cal. 720, 724 [192 P. 538]; *Pacific Gas & Elec. Co.* v. *Spencer* (1960) 181 Cal. App.2d 171, 172 [5 Cal.Rptr. 75].) In the instant case, the affidavit of juror Ramey provided ample support for the trial court's finding that she was not prejudiced against appellants prior to her selection as a juror. Under such circumstances, the court was clearly correct in holding inadmissible the jurors' affidavits pertaining to her comments in the juryroom. (*People* v. *Webb* (1956) 143 Cal.App.2d 402, 419-420 [300 P.2d 130].)

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 11, 1963. Peters, J., was of the opinion that the petition should be granted.