[Civ. No. 38092. Second Dist., Div. Three. Sept. 30, 1971.]

KENNETH CLEMENS, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

## COUNSEL

Irving H. Green and Eliot B. Feldman for Plaintiff and Appellant.

Belcher, Henzie & Biegenzahn, Robert D. Walker, Gilbert, Thompson, Kelly, Crowley & Jennett, James B. Crowley, Jean Wunderlich, Haight, Lyon & Smith, William M. Fitzhugh and Henry F. Walker for Defendants and Respondents.

## OPINION

**ALLPORT, J.**—This case is now before us as a sequel to *Clemens* v. *Regents of University of California*, 8 Cal.App.3d 1 [87 Cal.Rptr. 108], decided May 25, 1970. (Pursuant to rule 12(a) Cal. Rules of Court, we have made that record available to us.) On that appeal plaintiff sought relief from an adverse judgment entered upon the verdict of a jury in an action for damages for alleged medical malpractice. It was there contended that (1) defendants were liable as a matter of law; (2) there was error in jury instruction; (3) there was error in certain rulings and conduct of the trial court; and (4) misconduct of a particular juror required reversal of the judgment. After resolving the first three of these contentions adversely to plaintiff, this court in *Clemens,* supra, vacated the trial court's order made on October 20, 1967, denying plaintiff's motion for new trial with instructions to hold a new hearing on that motion. Pursuant to the decision in *Clemens, supra,* a rehearing was held. Upon rehearing the following memorandum decision was rendered by the trial court: "The Court has very carefully reviewed all of the affidavits submitted in connection with the Motion for New Trial in this matter.

"This case was remanded to this Court solely for the purpose of determining whether or not this Court should grant a new trial in view of the decision in *People* v. *Hutchinson* in relation to the conduct of juror Pruden.

"The Court has come to the conclusion: 1. That no response made by the juror in question in the *voir dire* examination constituted or was a fraud upon the Court or constituted a fraud in relation to his qualifications to sit as a juror; 2. That the juror in question was not guilty of any coercion resulting in the verdict for the defendants; 3. That the juror in question did not exercise any undue influence over the decision reached by the majority of the jurors in this case.

"Consequently, in view of the above, the Motion for New Trial is denied."

█ Plaintiff now appeals from the "Judgment entered in the above entitled action in favor of the defendants . . . and against plaintiff . . . on the 28th day of August, 1967 . . . and also appeals from the Memorandum Decision on Motion For New Trial," denying the motion. No appeal lies from the order denying the motion for a new trial and the purported appeal therefrom must be dismissed. (Code Civ. Proc., § 904.1; *Bakity* v. *County of Riverside,* 12 Cal.App.3d 24, 28, fn. 1 [90 Cal.Rptr. 541]; *Capaldi* v. *Levy,* 1 Cal.App.3d 274, 277, fn. 1 [81 Cal.Rptr. 629].) The notice of appeal in *Clemens* v. *Regents of University of California, supra,* 8 Cal. App.3d 1, was filed October 27, 1967, and that appeal was governed by Code of Civil Procedure sections 956 and 963. (Repealed in 1968.) At that time, although nonappealable, an order denying a motion for a new trial was subject to review on appeal from the judgment. (*Campbell* v. *Adams,* 250 Cal.App.2d 756, 757, fn. 1 [59 Cal.Rptr. 63]; *Richards* v. *Gemco,* 217 Cal.App.2d 858, 859, fn. 1 [32 Cal.Rptr. 65].) Since *Clemens, supra,* neither affirms nor reverses the judgment in this case but only establishes the law of the case as to points one through three, the judgment therein is not yet final.[1] We conclude that appellate review of the claim of juror misconduct lies on this appeal from the judgment entered in *Clemens, supra,* August 28, 1967.

█ We turn now to a review of the merits of the trial court's ruling on rehearing of the claim of jury misconduct. A consideration of the memorandum decision referred to above compels the conclusion that, in denying plaintiff's motion, the court below misconstrued its function and failed to find on the issues material to a proper resolution of that claim of error. It

---

[1]In *Clemens,* at page 5, the court uses the word "reverse." This appears to be a typographical error. The purport was to "remand" for reconsideration by the trial court of the question of jury misconduct. The decision neither affirms nor reverses the judgment as such.

is obvious that the findings of lack of fraud, coercion and undue influence on the part of juror Pruden were based upon the belief that none of the eight other jurors voting for verdict did so as the result of the statements or actions of this particular juror. This is made clear by reference to the following comment of the trial court made during the rehearing of the motion: "Well, one very interesting thing the court has noted and that is that none of the jurors whose affidavits were submitted who voted in behalf of the defendant indicated that they were persuaded to vote in that fashion or in that manner by anything that the doctor had to say.

"There are affidavits indicating that they thought—at least one of them thought that what the doctor had to say influenced someone else but not them."

Evidence of the effect of statements or conduct of a juror upon the state of mind of the other jurors is incompetent. (Evid. Code, § 1150, subd. (a).)[2] In *Anderson* v. *Pacific Gas & E. Co.,* 218 Cal.App.2d 276, 280-281 [32 Cal.Rptr. 328], it was said: "It is settled that those affidavits averring that Larson and his fellow jurors were in no way affected by his misconduct were properly stricken by the trial court. The affidavits of jurors may not be received as evidence that the misconduct of one of their number did not influence their deliberations or decision. (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.* (1909) 156 Cal. 379, 397 [104 P. 986].)"

In ruling as it did the court below failed to consider and find upon the issue of plaintiff's constitutional right to trial by a jury consisting of 12 unbiased unprejudiced individuals. (Cal. Const., art. I, § 7.) In *Deward* v. *Clough,* 245 Cal.App.2d 439 [54 Cal.Rptr. 68], this court said at page 444: "In both the federal courts (by U.S. Const., Amend. VII) and in the state courts of California (Cal. Const., art. I, § 7) the right to a trial by jury in an action such as this is jurisdictional. (*People* v. *One 1941 Chevrolet Coupe,* 37 Cal.2d 283 [231 P.2d 832].) And 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury. . . .' (*People* v. *Hughes,* 57 Cal.2d 89 [17 Cal.Rptr. 617, 367 P.2d 33].) The guarantee is to *12* impartial jurors. This does not mean that every insignificant infringement of the rules by a juror calls for a mistrial or a new trial. Code of Civil Procedure section 657, subdivision 1,

---

[2]Evidence Code section 1150, subdivision (a) reads as follows: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

calls for the granting of a new trial for irregularity in the proceedings of the jury by which either party was prevented from having a fair trial."

For a juror to prejudge the case is serious misconduct. (Code Civ. Proc., § 611; *City of Pleasant Hill* v. *First Baptist Church,* 1 Cal.App.3d 384, 428, 429 [82 Cal.Rptr. 1]; *Deward* v. *Clough, supra,* 245 Cal.App.2d at p. 444.) ■ The existence of an irregularity in the proceedings of the jury contemplated by Code of Civil Procedure section 657, subdivision 1,[3] as being a ground for a new trial when tried on conflicting affidavits or declarations, is a question of fact to be resolved by resort to competent evidence. (*Weathers* v. *Kaiser Foundation Hospitals,* 5 Cal.3d 98, 108, 109 [95 Cal.Rptr. 516, 485 P.2d 1132].)

■ A proper determination of the issue in the instant case required a finding by the trial court as to whether juror Pruden himself entertained and concealed such a bias or prejudice toward plaintiff during his *voir dire* examination as to prevent him from giving plaintiff a fair trial (*Pollock* v. *Standard Oil Co.,* 256 Cal.App.2d 307, 309 [64 Cal.Rptr. 66]; *Kraus* v. *Walt Disney Productions,* 221 Cal.App.2d 736, 740 [34 Cal.Rptr. 702]), or whether he was guilty of prejudging the case to plaintiff's detriment. No such factual finding was made by the trial court. We cannot therefore resort to the sometimes convenient prerogative of an appellate court as expressed in *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98, 108: "When an issue is tried on affidavits . . . and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." (Citations omitted.) Nor may we merely look to the rule of abuse of discretion as set forth in *Diemer* v. *Eric F. Anderson, Inc.,* 242 Cal.App.2d 503, 509 [51 Cal.Rptr. 657], in considering the propriety of the ruling of the trial court. To adopt such procedure would be to let form control substance. (*Lippold* v. *Hart,* 274 Cal.App. 2d 24, 26 [78 Cal.Rptr. 833].) With respect to the form of relief now available, it appears that the time for ruling on plaintiff's motion expired no later than 60 days after the filing of notice of intention to move for a new trial (September 1, 1967) except as such was modified by *Clemens, supra.* (Code Civ. Proc., § 660.) We conclude that the trial court's jurisdiction to act has now expired. It would be inappropriate for us to attempt to revive that jurisdiction by further remand for a second reconsideration

[3]Code of Civil Procedure section 657, subdivision 1 reads: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: 1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial."

of the questions of bias, prejudice and prejudgment. (*Lippold* v. *Hart, supra,* 274 Cal.App.2d 24, 27.) In view of the conclusions we reach herein remand for further trial court consideration of the motion for a new trial would be futile. There is a maxim of law that it is to the interest of the republic that there be an end to the case. (*C. H. Duell* v. *Metro-Goldwyn-Mayer Corp.,* 128 Cal.App. 376, 385 [17 P.2d 781].) We therefore shall endeavor to make an appropriate ruling on these questions thus disposing of the matter at this time. (Code Civ. Proc., § 43.[4]) In so doing we are not unmindful of the statement in *Clemens* v. *Regents of University of California, supra,* 8 Cal.App.3d 1, at page 19, wherein it is said: "While the facts are by no means conclusive that a new trial should be granted if the evidentiary principle of *Hutchinson* is applied to the proceedings at bench, they do indicate that the trial court might have reached a different result if *Hutchinson* had been decided prior to the critical hearing." (See also fn. 4, p. 16.)

We have made an independent review of the *voir dire* examination of the jurors in general and of juror Pruden in particular, as well as the material and competent portions of the many affidavits and declarations on file. This examination, together with the reasonable inferences to be drawn therefrom, leads us to the inevitable conclusion that at the time of his *voir dire* examination the juror in question entertained and concealed a substantial bias and prejudice against persons (including plaintiff) who would prosecute medical malpractice litigation. It appears that he retained this state of mind throughout the trial and was guilty of prejudging the issues on several occasions prior to the submission of the case to the jury as a whole for deliberation. When asked regarding "the nature of [his] profession or employment" by the court on *voir dire* this juror stated, "Well, I do ranching and I have an office, investment planning." At no time did he elaborate thereon with respect to his being or having been a dentist or as to his relationships with members of the medical profession either socially or professionally. He stated in response to questions by counsel for plaintiff that he had no bias or prejudice against malpractice litigation and that on the contrary he would encourage such in a proper case. Pruden stated that he knew of no reason why he could not be fair and impartial and that he had formed no opinion of the merits of the case at the time of his *voir dire*. We believe the nature of the case and general tenor of the jury *voir dire*

[4]Code of Civil Procedure section 43 reads: "The Supreme Court, and the courts of appeal, may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. In giving its decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case. Its judgment in appealed cases shall be remitted to the court from which the appeal was taken."

with respect to the occupations of the jurors and their relations with the medical profession should have indicated to juror Pruden a need to volunteer information as to his background and to elaborate on his state of mind even though the court and counsel did not pursue the subjects in detail. The answers given to the specific questions asked were such as to lead the examiner into a false sense of security with respect to the juror's state of mind on the subject of bias, prejudice and prejudgment. A reasonable inference is compelled to the effect that this juror knowingly and voluntarily concealed the existence of a state of mind adverse to plaintiff and which was subsequently developed by affidavit and declaration. The statements of jurors Brandon, Jimenez, Leventen, Lietzow, Hanlon, Yokoyama and Lippert, reveal that Pruden was a dentist but preferred not to be called Doctor. That, although he knew he shouldn't be on the case, he wanted to be on it for some reason of his own and therefore did not reveal that he was a doctor because he would have been "kicked off." These affidavits and declarations contained statements attributing substantial bias and prejudice against plaintiff as well as evidence of prejudgment of the issues. We will not burden this opinion with the content of all of the affidavits and declarations. The following from the affidavit of Claire S. Hanlon will suffice for illustration:

"That she was a juror in the above entitled case, and that during her service as a juror, she became acquainted with a fellow juror whose name as given at the time of jury selection was L. LEO PRUDEN. That during the early stages of the trial of said action, said juror PRUDEN invited affiant to ride to and from Court with him because of the proximity of their residences. . . . During the selection of the jury, affiant observed that said DR. PRUDEN did not advise anyone that he had practiced dentistry for many years, and your affiant asked him after the jury was selected why he did not announce the fact that he was a dentist, and DR. PRUDEN said, 'I answered truthfully all of the questions that were asked me and they didn't ask me what I did before, so that's their problem.' Affiant said to DR. PRUDEN that morally he should have disclosed the fact anyhow, and he replied that, 'If I had disclosed the fact that I was a dentist, they never would have let me serve.'

"Thereafter, during the course of the trial, affiant had many conversations with DR. PRUDEN, either when riding to and from Court or during recess periods during the trial. On one occasion, when they were discussing some aspect of the case while riding in the car and DR. PRUDEN, expressed his opinion about something relating to the case, affiant said to him, 'You can't call yourself a fair and impartial juror,' and DR. PRUDEN said, 'I admire you for saying it, but nobody is never going to change my mind.'

"On another occasion, DR PRUDEN referred to affiant's keeping notes of the testimony and said to affiant, 'Throw those silly things away because it won't do anybody any good,' and said 'They're never going to convince me that they didn't save the man's life.' DR. PRUDEN said to affiant, 'I've been in surgery many times and I know a lot more about it than you do.'

"Early during the trial, DR. PRUDEN told affiant and other jurors not to call him Doctor around the Courthouse because if it was discovered that he was a doctor, he would be 'put off the jury.'

"During the argument by plaintiff's counsel concerning damages, DR. PRUDEN said, while sitting in the jury box loud enough for affiant to hear, 'I'll give him a dollar and a bottle of arsenic.'

"On another occasion, when the plaintiff, KENNETH CLEMENS, was on the witness stand and testifying concerning the matter of UCLA hospital records, DR. PRUDEN, in the hearing of affiant, said, 'He's nothing but a damn thief.' On another occasion, after plaintiff's counsel had testified concerning the Gardena Hospital records, DR. PRUDEN said to affiant, while walking into the Courtroom from recess that 'he's nothing but a thief too.'

"DR. PRUDEN's attitude towards the plaintiff and the plaintiff's case got so bad that affiant refused to continue to ride with him and made other arrangements for transportation to and from the Courthouse. . . .

"On one occasion, while riding with DR. PRUDEN, he stopped at his office at 710 Wilshire Boulevard in Santa Monica, and affiant observed that the name on his office door was DR. LEO PRUDEN, and that his office is in a medical building where practically all the tenants are doctors and dentists. That even on his parking space by the building, the name plate reads DR. PRUDEN.

"During the deliberations of the jury, DR. PRUDEN was the leading advocate for the defense in the case. That from the very outset of deliberations, DR. PRUDEN expressed his opinion that the plaintiff should not recover in this case, and persisted in arguing not according to the facts of the case, but by advising jurors of his medical knowledge and training. DR. PRUDEN argued that as a medical man, he knew that the defendants had saved the plaintiff's life and that the plaintiff wasn't entitled to any damages, and whenever any of the evidence was called to his attention, he brushed it aside, and whenever any medical question came up, he referred to his own experience and told the jurors that he had been in surgery many times."

It has been held that the affidavit or declaration of the involved juror denying prejudice is sufficient to support a negative finding on the issue. (*Anderson* v. *Pacific Gas & E. Co., supra,* 218 Cal.App.2d 276, 284.)

With this in mind we have examined the declarations of Pruden filed by defendants in opposition to the claims of plaintiff. The juror states that he is a retired dentist, not having practiced for over two years, although he did not deny, as disclosed by the affidavit of Irving H. Green dated September 5, 1967, that Leonis L. Pruden, dental license number 5891 was an associate member of the Western Dental Society, or that he had offices at 710 Wilshire Boulevard, Santa Monica, California, as disclosed by this affidavit and that of juror Brandon. Pruden claims to have been prevented by the court from advising as to his having been a dentist (since it would have been of help in judging the case) although he did not feel that this fact should have disqualified him. He denied bias or prejudging the issues. He specifically denied many of the charges made against him by jurors Brandon, Jimenez, Lietzow, Yokoyama, Leventen and Hanlon. We do not, however, find a complete and categorical denial of all of the charges. Neither do his declarations compel us to negate the charges in the face of what, to us, is overwhelming evidence to the contrary. We must, in view of the almost unanimity of his fellow jurors (including some of those voting in favor of the verdict as rendered), conclude that at all times juror Pruden was possessed of substantial bias and prejudice against plaintiff and that he did in fact prejudge the issues long before the case was submitted for deliberation. While the affidavits to some extent are conclusionary as to the existence of bias, such is clearly inferable from the factual statements before us. In *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417 [274 P.2d 53], it was said at pages 424-425: "Appellants' contention that there is no evidence that the bias already existed at the time of the *voir dire* examination seems without merit. It is true that the statement in the affidavits of jurors in support of the motion for a new trial, that the prejudiced frame of mind existed from the outset of the proceedings is a conclusion of these jurors without evidentiary value, but the trial judge in his wide discretion could infer the earlier existence of the prejudice from the utterances in the jury room."

We further find that this bias and prejudice was not discovered by plaintiff until July 28, 1967, the 15th day of this protracted trial. We note that, upon discovery, a motion was made to dismiss juror Pruden and to substitute an available alternate. The motion was denied. In so doing the court indicated its belief in the existence and seriousness of the problem by saying: "To excuse him might be a difficult thing to do. . . . Because I have noticed he is very friendly with all the members of the jury, and he came in the other day, I think, with a great big armload of fruit. I guess he is pretty popular with the jury, and you might have a problem if we excused him.

"They would all want to know why, and he would probably be resentful.

If he were excused, I would have to tell him the reasons and try to get his cooperation not to talk about it in the hall. . . .

"As I pointed out heretofore, my observation has been that this particular juror is very friendly with all of the members of the jury, bringing in fruit and participating in the purchase of a cake. I think he and one of the lady jurors were the ones that did it for the birthday of one of the jurors.

"As a matter of fact, he came in with the cake the morning they came in, because I remember his going by with this package in his arm. . . .

"We have cases in which dentists are sued for alleged malpractice, but the trouble is, as I see it, more harm may be done than good accomplished by removing him from the jury, because inevitably I think that it will get back somehow to the jurors, the reason for it.

"It might be highly prejudicial."

The existence of the foregoing motion by plaintiff eliminates the necessity for the so-called "no knowledge" affidavit requirement as reiterated in *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98, 102-103.

It remains for us to determine whether or not the bias, prejudice and prejudgment which we have found existed and the trial court's error described above prevented plaintiff from having a fair trial and was therefore prejudicial. (Cal. Const., art. VI, § 13; *Noll* v. *Lee,* 221 Cal.App. 2d 81, 91 [34 Cal.Rptr. 223].) Our function in this respect is described in *Deward* v. *Clough, supra,* 245 Cal.App.2d 439, at page 445 as follows: "While it is true than many California cases have stated the trial court exercises a discretion in weighing the prejudicial effect of error (e.g., misconduct of a juror) and that its action will be disturbed only for an abuse of discretion, a more accurate statement, as we had occasion to observe in *Wilkinson* v. *Southern Pacific Co.,* 224 Cal.App.2d 478, at page 483 [36 Cal.Rptr. 689], is that article VI, section 4½, of the California Constitution 'imposes on the appellate court a direct obligation to review the entire record . . . to determine *independently* whether error has prejudiced the appellant.' (Italics supplied.) Therefore, while a determination by the trial court *granting* a, new trial may be disturbed only for an abuse of discretion, the same observation is a *non sequitur* in an appeal from the judgment after an order *denying* a motion for a new trial."

We note that the verdict in the instant case was 9-3 for the defendants. As was said in *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98, at page 110: "Since the verdict was nine to three, the disqualification for bias of any one of the majority jurors could have resulted in a different verdict. . . ." Our independent review of the entire record requires the

conclusion that the retention of Dr. Pruden as a juror in this case was prejudicial to plaintiff's constitutional right to a fair trial by 12 impartial jurors. As was said by this court in *Deward* v. *Clough, supra,* at pages 441-442: "Since the misconduct [bias, prejudice and prejudgment] was clearly proved, since it was serious and since we have concluded it resulted in an unfair trial, we have been compelled to find that the denial of a new trial was prejudicial error."

In arriving at our decision we are not unmindful of the nature of the litigation, the fact that this jury trial consumed 33 actual trial days, over 3,400 pages of reporter's transcript, 4 years of appellate review, must now be retried and perhaps again appealed. Much of the enormous expense incurred and yet to be incurred by the litigants and by the citizen taxpayers supporting the existence of the courts could have been eliminated had this juror at the outset approached his task in the manner contemplated by the constitutionally guaranteed right to all of a fair trial. We cannot help but feel that a more intensive *voir dire* examination by the court or counsel on the subjects of occupation, bias, prejudice and prejudgment might have avoided these unfortunate consequences. In any event full consideration coupled with decisive remedial action by the court when presented with the problem during trial or on motion for new trial would have immeasurably benefited all concerned.

The purported appeal from the order of September 17, 1970, denying the motion for new trial is dismissed. The judgment entered August 28, 1967, is reversed.

Cobey, Acting P. J., and Schweitzer, J., concurred.

A petition for a rehearing was denied October 28, 1971, and respondents' petition for a hearing by the Supreme Court was denied November 24, 1971.